EUGENE DAWSON v. STATE OF INDIANA.

[No. 2-574A106. Filed March 27, 1975. Rehearing denied May 7, 1975. Transfer denied August 19, 1975.]

*David F. McNamar, John Muller, Steers, Klee, Sullivan, McNamar & Rogers,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *G. Philip Duckwall,* Deputy Attorney General, for appellee.

GARRARD, J.—Defendant, Dawson, appeals from a conviction of First Degree Arson after trial by jury.

The facts favoring the verdict may be summarized in the following manner.

On January 7, 1972, a fire consumed the top floor of the Indianapolis Downtown Hilton Hotel. Investigations conducted by Lt. Miller of the Indianapolis Fire Department, Arson Division, led him to the home of Dawson, a hotel employee. Lt. Miller's suspicions were aroused by inconsistencies in statements made by Dawson regarding his whereabouts and the particulars of his conduct at the time of the fire.

The lieutenant talked with Dawson in the home and orally advised him of his rights. Dawson confessed starting the fire. He was then placed under arrest and taken out to the lieutenant's car. He was then, in the presence of Officer Schanz, again given the *Miranda* warnings, and at this time signed a waiver form. When he was then asked to write out his confession, he replied that he did not write very well. He then repeated the confession, which was written down by Lt. Miller. Miller then read the confession aloud and handed it to Dawson, who signed it.

In addition, Mrs. Borgman, a nurse, testified that when Dawson was being treated for an injury after the fire she had

accused him of starting the fire, and he had replied, "That's right, lady. How did you know?"

On appeal, Dawson asserts seven grounds of error:

A. Failure to grant a mistrial when it was disclosed that Dawson had taken a polygraph examination.

B. Failure of the court to require production of grand jury testimony after an *Antrobus*[1] foundation was laid.

C. Failure to suppress the confession because the warnings given were inadequate.

D. Insufficiency of the evidence because Dawson's confession was not compatible with the state's theory of the crime.

E. Failure to grant a new trial because of newly discovered evidence.

F. Failure to admit into evidence under the official documents exception to the hearsay rule, a report made by a fire department official regarding the fire.

The seventh error urged is that there was an illegal arrest. However, this assignment is made for the first time in appellant's brief, and accordingly has not been properly preserved for review. Indiana Rules of Procedure, Trial Rule 59 (G) ; *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227. That the illegality of an arrest may be waived, see *Dickens* v. *State* (1970), 254 Ind. 388, 260 N.E. 2d 578.

ISSUE A:

Dawson's cross examination of Lt. Miller was extensive, penetrating and sometimes heated. At the end of a line of questioning designed to establish that the confession was inconsistent with the theory that an accelerant might have been used to start the fire, counsel asked Lt. Miller:

"Q. What else did you tell him that is not in this statement?"

Miller responded:

"A. I didn't tell him anything. He ran on a polygraph that next morning. That's when the sterno . . ."

---

1. *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873.

The court denied Dawson's prompt motion for a mistrial, but did order the answer struck and admonished the jury:

> "The jury will ignore anything this witness said, in reference to the answer to that question, in arriving at a verdict in this case, and in your deliberations, you are not to in any way, consider the statement made by this witness, in answer to that question."

The record discloses that Lt. Miller exhibited considerable difficulty in answering questions responsively. We share the view of the trial judge that counsel proffering a witness is generally responsible for his conduct in testifying. Witnesses who persist in continually volunteering statements unresponsive to the questions asked them may, for that matter, create such an impression of bias or lack of candor as to justify the trier of fact in disregarding their testimony. We, also, recognize that some witnesses become so unnerved by the courtroom experience as to be simply incapable of alert responsive answers. It is especially unfortunate when such a witness wears the badge of officialdom.

Whatever the reason in the present case, the record discloses that the judge gave serious consideration to the motion, and decided that admonishment was sufficient. We believe the case is within the holding of *Austin* v. *State* (1974), 262 Ind. 529, 319 N.E.2d 130, and that no clear abuse of discretion has been shown in the failure to declare a mistrial.

ISSUE B:

During cross examination of Lt. Miller, counsel requested production of his grand jury testimony after Miller admitted testifying before them regarding the Hilton fire. The prosecutor denied the existence of any recorded "minutes" of the grand jury testimony. His objection to the request was then sustained. No further request for production or for a hearing upon the existence of the grand jury testimony was made.

Under *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873, Dawson would have been entitled to examine the tran-

script of Miller's statement when (1) Miller had testified on direct examination; (2) a substantially verbatim transcription of the statement had been shown to probably be within the control of the prosecution; and (3) the statements related to matters covered by the witness' testimony in the present case.

Requirements (1) and (3) admittedly have been met. Furthermore, IC 1971, 35-1-15-10, Ind. Ann. Stat. § 9-810 (Burns Supp. 1974), which provides that the clerk of the grand jury shall take minutes of the proceedings and evidence and preserve them for the use of the prosecuting attorney, is sufficient to satisfy requirement (2) where testimony before a grand jury is the issue. The statutory duty creates the probability required by *Antrobus*. That the duty may not always be discharged; see, *Jaudon* v. *State* (1970), 255 Ind. 114, 262 N.E.2d 851.

*Antrobus* then provides that when the proper foundation is laid, the state must either produce the document or answer that there is no such statement within the state's control; there is a necessity to keep the statement confidential; or the statement contains other matters not covered in trial which the state does not wish revealed.

Where the state denies controlling such a statement and the defendant maintains that it does, the court shall conduct a hearing to resolve the dispute.

The precise question presented in Dawson's appeal is whether the court must *sua sponte* conduct such a hearing whenever the state responds that it has no substantially verbatim transcript of the statement within its control.

Clearly, the defendant is entitled to a hearing on the matter if he disputes the state's response. Oftimes the defense may be satisfied, if not by the formal response, by a few moments' conversation with opposing counsel. At other times, trial strategy may indicate foregoing a hearing.

We believe our Supreme Court answered the question in *Yeary* v. *State* (1971), 257 Ind. 159, 273 N.E.2d 96. The

court there held there was no prejudicial error in the court's failure to conduct a hearing on the existence of a written statement and its control by the state where the defendant did not request a hearing after the state asserted it did not have the statement. See, also, *Auer* v. *State* (1972), 154 Ind. App. 164, 289 N.E.2d 321.

As noted, the defense may well accept the state's answer that it does not have the requested document. Unless and until it notifies the trial court of a desire to pursue the matter, and in fact thereby creates a "disputed issue", there is no need to interrupt the trial for an *Antrobus* hearing. Having not advised the court that he did not accept the state's response that it had no transcript, Dawson cannot now complain of the court's failure to conduct a hearing. *Yeary, supra.*

ISSUE C:

Dawson asserts error in the failure of the court to suppress his confession on the basis that it was procured without an adequate explanation and waiver of Dawson's constitutional rights. He attacks both the sufficiency of the warning he received and the sufficiency of the evidence to establish a waiver. Assuming that Dawson was entitled to *Miranda* warnings since the record refers to Lt. Miller as having been deputized, we find the court did not err in refusing to suppress the confession.

Miller testified that the original oral confession was obtained from Dawson before Dawson was placed in custody and while the parties were in Dawson's home. The written confession was obtained in the automobile while it was parked in front of the home. Miller testified that prior to each confession, he read the following rights from his notebook to Dawson:

"The Indianapolis Police Department advises as follows: You have the right to remain silent. Anything you say may be used against you in court. You have the right to have a lawyer present now. If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court"

Each time Dawson was asked if he understood. Each time he replied that he did. He signed the written confession and separately signed the waiver statement contained on the form.[2]

The evidence at the suppression hearing also established that Dawson had an I.Q. of 83 indicating a dull normal to mildly retarded mentality. At the time the written confession was taken, he told Miller he could not "write too well", but he "appeared to read" what Miller wrote down. Although a cousin testified that Dawson could read, both Dawson and his mother testified at trial that he could not.

Dawson's counsel argues that a mere recitation of Dawson's rights coupled with his low mentality was not sufficient. He cites the opinion in *Coyote* v. *United States* (10th Cir. 1967), 380 F.2d 305, wherein the court endeavored to explain that the purpose of the court in *Miranda* v. *Arizona* (1966), 384 U.S. 436, was to require that defendants be given meaningful advice that they could comprehend about their constitutional rights. In *Bauer* v. *State* (1973), 157 Ind. App. 400, 300 N.E.2d 364, this court approved that view.

He also urges that *Bauer* requires us to find waiver to have been inadequately demonstrated.

In examining these contentions it is critical to recall that the decision to be made at a suppression hearing is more than an inquiry into the existence of specific "legal" prerequisites to securing an admissible confession. It also requires a consideration and determination of the facts and circumstances surrounding the confession to ascertain whether it was knowingly, intelligently and voluntarily given. IC 1971, 35-5-5-1, 2, Ind. Ann. Stat. §§ 9-1634, 1635 (Burns Supp. 1974) ; *Jackson* v. *Denno* (1964), 378 U.S. 368.

It is certainly true that where the record is devoid of any showing that the accused was advised of his rights by an

---

2. There is no dispute as to the adequacy of the language employed in the waiver statement.

officer conducting an in-custody interrogation, or where the record affirmatively shows the accused to have been insufficiently advised, a determination of voluntariness will not be permitted to stand. See, e.g. *Goodloe* v. *State* (1969), 253 Ind. 270, 252 N.E.2d 788.

In *Bauer* v. *State, supra,* we held that execution of a printed waiver of rights form is not conclusive where the accused had been taken into custody and appeared to the interrogating officer to have "a mental problem"; and where, without any inquiry as to whether he could read or whether he understood his rights, he was simply given the waiver form and told to read it and sign it if he wished. We held his signature without more was insufficient proof to establish the confession to have been knowingly, intelligently and voluntarily given.

In Dawson's case, the warnings given were substantially identical to those approved as adequate by our Supreme Court in *Emler* v. *State* (1972), 259 Ind. 241, 286 N.E.2d 408.

In addition, he was twice asked, and twice responded that he understood those warnings.

While from the circumstances urged by Dawson the trial court might have reached a different conclusion, there was substantial evidence of probative value supporting its conclusion that the confession was knowingly, intelligently and voluntarily given. When that determination is based upon conflicting evidence and the reasonable inferences to be drawn therefrom, it is not our function to reweigh the evidence to reach a different conclusion. See, *Matthews* v. *State* (1959), 239 Ind. 252, 156 N.E.2d 387; *Winston* v. *State* (1975), 263 Ind. 8, 323 N.E.2d 228.

ISSUE D:

Dawson's assertion that the evidence was insufficient relies upon an alleged conflict between the statement in Dawson's confession that he started the fire by lighting a tablecloth on a table near the bandstand and the state's theory that an accelerant was used. Thus Dawson urges the confession is unworthy of belief and without it the evidence was insufficient.

Dawson's reliance upon *Vuncannon* v. *State* (1970), 254 Ind. 206, 258 N.E.2d 639, is misplaced.

In *Vuncannon* equivocal testimony by the prosecuting witness as to whether a crime had indeed been committed was held insufficient to sustain a conviction where it was the only evidence on that subject.

Here the fire is undisputed and there was substantial evidence of probative value, aside from the confession, that it was arson.

The jury could have determined that Dawson's statement that he started the fire by lighting a tablecloth was not inconsistent with the opinion of Lt. Miller that sterno or some other accelerant had been used. Even if it determined the statement was inconsistent, it had to decide the weight to be accorded that inconsistency upon the balance of the confession and the admission made to Mrs. Borgman.

In short, the determination to be made was for the jury, and we are unable to say they erred.

ISSUE E:

Dawson urges a new trial should have been granted for newly discovered evidence. He refers to the potential opinion testimony of Charles P. Hill, formerly of the Indiana State Fire Marshall's office. Hill's affidavit, which accompanied the motion to correct errors, sets forth Hill's opinion that Dawson is innocent and that "there is physical evidence . . . which he personally obtained from the fire scene and made certain physical tests that demonstrated and supported his findings." We are given no clue as to the nature of either the evidence or the tests. More importantly, the affidavit affirmatively states that Hill disclosed these matters to Dawson's attorney prior to trial, and that although subpoenas were issued, he was, in fact, never served.

No showing is proffered as to why he was not served, nor does it appear that Dawson sought any continuance alleging Hill's unavailability.

Dawson has failed to satisfy the requirements of Rule TR. 59(A)(6). The court committed no error in refusing a new trial on this ground.

ISSUE F:

Finally, it is claimed that the court erred in excluding from evidence a report made by Chief Bolinger of the Indianapolis Fire Department regarding the fire. It is asserted that the report should have been received as an "official document" exception to the hearsay rule.

We do not reach that question. Bolinger was called as a witness by the defense. He was examined both as to his knowledge of the fire and the contents of his report. It certainly cannot be contended that the report, as such, would be conclusive even if "official".[5]

Therefore, even if we were to assume *arguendo* that the report could have been admitted, any error in its exclusion was harmless.

The judgment is affirmed.

Staton, P.J. and Hoffman, J., concur.

---

5. See, e.g. *Dale* v. *Trent* (1970), 146 Ind. App. 412, 256 N.E.2d 402.