John Marvin MUSIC, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 682S223.

Supreme Court of Indiana.

May 24, 1983.

Charles H. Ireland, North Manchester, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, after trial by jury, of Armed Robbery, Ind. Code § 35–42–5–1 (Burns 1979) and sentenced to sixteen (16) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court, after admonishing the jury to disregard a witness' reference to a polygraph examination, erred by not explaining to the jury, at that time, that polygraph evidence is not admissible due to its unreliability.

(2) Whether the trial court erred in denying Defendant's motion for a mistrial after a witness had made an assertedly implicit reference to a polygraph examination.

(3) Whether, after the witness' testimony referred to above, the trial court erred in not admonishing the jury to disregard the testimony and in not explaining the reason for the inadmissibility of polygraph evidence.

(4) Whether the trial court erred in admitting a tape recording of a defense witness' prior statement to the police.

(5) Whether the trial court erred in allowing a witness called in rebuttal to relate a prior statement Defendant had made to her.

(6) Whether the trial court erred in allowing the State, in rebuttal, to introduce evidence of a prior out of court statement by him, assertedly for impeachment purposes, inasmuch as he had not testified.

(7) Whether the trial court improperly allowed the State to impeach a defense witness upon a collateral matter.

\* \* \*

## ISSUE I

■ At trial witness Hazel Stephens testified that Defendant had admitted, to her, his involvement in the charged robbery, the hold-up of a Burger Dairy Store on February 4, 1980. On cross-examination, defense counsel attempted to show a motive for the witness to have lied. In September, 1980 Ms. Stephens' son had been implicated in an unrelated theft. The son gave a statement to police implicating Defendant in that theft, and counsel, through leading questions, posited for the jury that the witness, on October 2, 1980, related Defendant's alleged admissions in order to focus blame for that theft. Essentially, he asked the jurors to consider Ms. Stephens had reasoned that, if Defendant were guilty of a robbery, the police would naturally pursue him instead of her son. On redirect examination, the State attempted to portray a more accurate version of the incident; however, the witness volunteered an unsolicited response, which drew an objection from Defendant:

"Q. The police investigation did not result in your son being charged, did it?

"A. No, I took my son down for a lie detector test.

"MR. IRELAND: Objection, your honor and move for a mistrial."

Subsequently, defense counsel withdrew the motion for mistrial and, without objection, the trial court admonished the jury:

"Court: There has been an objection made to an answer made by Mrs. Stephens referring to her son being taken to the Police Station to take a lie detector test. I now admonish the jury to disregard that statement by Mrs. Stephens. I am also going to admonish the witness not to refer to any polygraph tests given or not given, I will admonish the counsel for the State of Indiana, Mr. Thrush not to refer to any polygraph test given or not given in any respect whatsoever."

Thereafter, the trial court gave the following final instruction, tendered by Defendant:

"Polygraph, or lie detection, tests or examinations have not been proven to be sufficiently accurate to mandate their admission into evidence at trial. The results of a lie detector test are incompetent evidence and, as such, are inadmissible at trial.

"You are instructed to wholly and completely disregard, in your deliberations in this case, any evidence or reference made by any witness regarding the taking or attempt to take any polygraph or lie detection examination."

Defendant's argument proceeds from a speculative premise:

"Although Hazel Stephens was not herself given the polygraph examination, or at least did not testify to that effect, her credibility was affected by her son's involvement in the ring theft. Once the jury realized that the son, \* \* \*, had taken the examination it was likely to conclude that he was telling the truth and that, therefore, the witness, Hazel Stephens, was also telling the truth."

He offers no reason why the jury should or would credit the witness' testimony simply because her son had implicitly passed a polygraph examination upon an unrelated matter. Speculation aside, the record reveals that the witness' irrelevant testimony was unsolicited, *e.g., Walters v. State,* (1979) Ind., 394 N.E.2d 154, 158, the motion for mistrial was withdrawn, Defendant did not object to the trial court's admonition at the time it was given, and the trial court gave Defendant's curative and strongly worded instruction. Defendant has presented nothing to rebut the presumption that the trial court's admonition to disregard any mention of a polygraph examination, reinforced by the final instruction, rectified the harm, if any in fact resulted, from the witness' unsolicited and irrelevant testimony.

## ISSUES II & III

The aforementioned unrelated theft was also the subject of the testimony of a police officer who explained why Ms. Stephens' son had not been arrested for that crime:

"A. (The son) came forward at the beginning of the investigation, advised of what he had seen and of the conversation that he had had with Mr. Music and due to other questions that were asked of him and other requests that were made of him and the way he answered those, he became instantly not a ·suspect, in my opinion. In a case like this, where it is one word against the other one, we have a very easy way of investigating, a very sure way of finding out who did it and who didn't and we used these methods and (the son) was not a suspect."

Defendant did not request a mistrial when this testimony was given. However, when he posed a question, upon re-cross-examination, the State requested a bench conference. After that conference, questioning outside the presence of the jury revealed that one of the aforementioned "methods" employed was the polygraph examination given to Ms. Stephens' son. The judge ruled as follows:

"COURT: * * * I fail to see that with these statements made by this witness, that the jury has been prejudiced by his statements. I think that—I really don't even believe that admonishment is needed, I feel that if Mr. Roberts referred to a polygraph taken by the defendant, then I would not have much trouble in determining whether or not there was a prejudice with the jury. He did not mention polygraph, he mentioned several—if I remember the testimony—several methods, the polygraph was not mentioned exactly by name and it certainly didn't refer to any examination of this defendant and I fail to see that the jury is so unduly prejudiced that they couldn't fairly try this case."

Defendant vigorously asserts that the jury was prejudiced by the officer's testimony; however, he identifies nothing concrete or specific. Moreover, having made an issue of the facts of the investigation of the unrelated theft first to discredit a State's witness and again upon cross-examination of the police officer, Defendant was in a poor position to attempt to foreclose the State from fully exploring that issue.

See *Drollinger v. State,* (1980) Ind., 409 N.E.2d 1084, 1087; *Gilliam v. State,* (1978) 270 Ind. 71, 76–77, 383 N.E.2d 297, 301–02; *Randolph v. State,* (1978) 269 Ind. 31, 36, 378 N.E.2d 828, 831.

■ The ruling upon a motion for mistrial is subject to review only for an abuse of discretion. *Morse v. State,* (1980) Ind., 413 N.E.2d 885, 889. Defendant has not shown that the trial court abused its discretion in denying the mistrial, nor has he demonstrated that the officer's answer, a mere allusion to an unrelated polygraph examination, denied him a fair trial.

### ISSUE IV

Defendant next complains of the admission into evidence of a tape recording of an interview between a police officer and a defense alibi witness, Jason Kelly, who acknowledged the questions and answers. Apparently the officer was asking questions about events prior to the robbery charged in this case, but Kelly testified that he had thought that the questions had referred to an unrelated incident at a machine works.

■ Defendant argues that the State erroneously impeached Kelly by extrinsic evidence without first laying a proper foundation, in that Kelly had not failed to recall nor denied having made the prior statement. Additionally, Defendant asserts that there was no prior inconsistency in the statement, inasmuch as Kelly explained that he had functioned under a misunderstanding when he answered the officer's questions. The jury, however, was not obligated to credit Kelly's explanation. If it did not believe his explanation, the prior statement spoke for itself with respect to Defendant's alibi defense. While it is true that the impeachment had already been accomplished when Kelly acknowledged his prior inconsistent statement, after he had attempted to explain the reason for the inconsistency, the tape recording became admissible to refute that explanation. *Eg., Moss v. State,* (1982) Ind.App., 433 N.E.2d 852, 855 (opinion of Conover, J.) (trans. denied). The decisions of this Court have

allowed the trial court to admit evidence relevant to whether an apparent inconsistency between the witness' in court testimony and a prior statement is, in fact, an inconsistency or does, in fact, affect the witness' credibility. *Tokacs v. State,* (1930) 202 Ind. 259, 266–67, 173 N.E. 453, 455; *Koehler v. State,* (1919) 188 Ind. 387, 390, 123 N.E. 111, 112; *Toledo, Wabash, and Western Ry. v. Harris,* (1874) 49 Ind. 119, 123; IIIA Wigmore, Evidence, section 1044, p. 1062 (Chadbourn Rev.1970). The record reflects no error upon this issue.

## ISSUE V

At trial, a State's witness, Sharon Jones, testified on rebuttal that on the night after the Robbery, Defendant had requested her to lie about where he was at the time of the Robbery. He asked the witness to state, if anyone asked, that he had accompanied her to a laundromat, which he had not done. Defendant objected upon the grounds that it was immaterial, irrelevant, hearsay, and improper rebuttal.

■ Defendant's statement to the witness circumstantially evidenced a consciousness of guilt. Given the contents, and having occurred shortly after the event, it inferentially constituted an attempt to create or manufacture a false alibi for the event. It was therefore, relevant and material. It was also not hearsay because it was not offered for the truth of the matter asserted therein. *See Morse v. State,* (1980) Ind., 413 N.E.2d 885, 887 (cases cited therein). Finally, although Defendant seemingly conceded at trial that this testimony was admissible in the State's case in chief, he vehemently challenged the State's assertion that it rebutted the alibi defense upon the ground that he had produced no alibi. The trial court did not agree, noting that Defendant has introduced evidence from which the jury could have inferred an alibi. We need not consider this haggling, which permeated the entire trial:

"Therefore, even though the court permits a witness to testify during rebuttal regarding a matter which, in fact, is not in rebuttal but is a matter related to the state's case in chief, the irregularity will not be treated as reversible error unless under the circumstances the appellant was prevented from presenting rebuttal evidence thereto. Citations omitted. There is no showing in this case that this action of the court in any way prevented appellant from fully presenting his defense." *Griffith v. State,* (1959) 239 Ind. 321, 323, 157 N.E.2d 191, 192.

## ISSUE VI

Defendant next contends that the witness' testimony related under Issue V, supra, was relevant only to impeach his credibility and was therefore, inadmissible inasmuch as he had not testified. He arrives at this specious conclusion as follows:

"The appallent's (sic) consciousness of guilt and his state of mind were neither raised during the Defendant's case in chief. The only possible use therefore in rebuttal was to impeach the Defendant's credibility although he did not testify and his credibility as a witness was therefore not in issue. Such rebuttal evidence was therefore irrelevant and immaterial and did not refute the evidence presented by the Defendant and therefore was improper rebuttal.

"The statement was not shown to have been made under circumstances in which the appallent (sic) was aware that he was implicated in the crime, and such a statement could have been made without reference to the Burger Dairy robbery for which the appallent (sic) was eventually charged. He could have had any number of reasons for making such a statement."

We submit that one of those reasons could have been a consciousness of his guilt of this offense.

■ We have determined in Issue V, supra, that the statement was admissible as substantive circumstantial evidence of guilt. We have further found that the record discloses no error by reason of the order in which the statement was presented to the jury. This assignment of error is, consequently, meritless.

## ISSUE VII

Under this assignment, Defendant raises two objections to the admissibility of a police officer's testimony, offered in rebuttal.

"The scope of rebuttal is a matter left to the discretion of the trial court and failure to limit its scope is reversible error only for abuse of that discretion." *Wells v. State,* (1982) Ind., 441 N.E.2d 458, 464.

In response to his objection that the testimony was irrelevant, immaterial and outside the scope of rebuttal, the State argued that the testimony impeached the testimony of Jason Kelly. Kelly had said in his statement to the officer, which statement was the subject of Issue IV, supra, that another defense witness, Terry Miller, had returned to a party held on the night of the instant robbery at 8:45 p.m. At trial he had explained that he had thought that the officer's questions had related to a different incident at a machine works; thus he had made a mistake in his statement concerning what Miller had done.

The inculpatory aspect of Kelly's statement was circumstantial. The robbery had occurred at about 8:30 p.m. at a place only a short distance from the location to which Miller had returned at 8:45 p.m. Because Miller resembled the physical description (height/weight/hair color) of one of the bandits, the State had posited on his cross-examination that he was Defendant's accomplice.

To show that Kelly's explanation for the inconsistency between his in court testimony and out of court statement was less than truthful, the State called a police officer, who testified that Miller had been apprehended at the scene of the machine works "breakin." However, with respect to the time of such apprehension, the officer could only say: "I don't recall the time, it was later, it was late in the evening. Before midnight, I think."

■ If the jury believed the officer, it might reasonably have inferred, from the remainder of the evidence, that Kelly had lied in court and had told the truth in his prior statement. The statement also refuted the testimony of another defense witness, Defendant's girlfriend, who stated that Defendant had left and returned to the party on that night, whereas Kelly had told the police that Defendant and Miller had left and Defendant had never returned. Thus, the whereabouts of Defendant at the time of the offense was not a collateral matter. Additionally, in light of the numerous contradictions in the evidence, witness Kelly's credibility was very much in issue. The police officer's testimony, for what it was worth, was relevant to assisting the jury in assessing Kelly's credibility upon the issue of Defendant's whereabouts at the time of the offense. *See Drollinger v. State,* (1980) Ind., 409 N.E.2d 1084, 1087–88; *Teague v. State,* (1978) 269 Ind. 103, 123, 379 N.E.2d 418, 428. We find no error in its admission over this contention.

■ Defendant's second contention is that the officer's testimony impeached Miller's credibility with a bad act that had not been reduced to a conviction. He assumes incorrectly however, that the evidence was otherwise inadmissible. We have found that it was admissible. The only remaining issue is whether its potentially prejudicial impact on Miller's testimony outweighed its probative value with respect to Kelly's testimony. We think not, due to the evidence presented in the Defendant's case in chief, which partially consisted of two witnesses, Kelly and Defendant's girlfriend, both of whom admitted that they had not told the truth in their prior statements to the police, and a third witness, Miller, whom the State theorized was an accomplice. Moreover, it appears from the record that Defendant chose to stand upon his assertion of "irrelevance." In his second objection to the officer's testimony, he requested that the answer be stricken and the jury admonished to disregard it. At no time did he request a limiting instruction to the effect that the jury should consider this testimony only as it related to the credibility of witness Kelly. Defendant merits no relief upon this assignment of error.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.