Melvin L. McKINLEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–1083A359.

Court of Appeals of Indiana,
Fourth District.

June 25, 1984.

Glenn A. Emley, Fruechtenicht Law Office, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Melvin L. McKinley appeals his conviction of attempted battery of a law enforcement officer, a class A misdemeanor (IND. CODE 35–42–2–1, 35–41–5–1), urging the trial court improperly restricted his right to cross-examine the State's leading witness, Officer Kevin Rarey, and to present evidence of the incidents surrounding his arrest (including a severe beating by the arresting officer) and the later filing of the charge against him. McKinley asserts the omitted evidence was part of the res gestae

of the alleged offense and was relevant to both his claim of self-defense and to possible bias on the part of Rarey and other of the State's witnesses. We agree and reverse for a new trial.

### FACTS

This case arose out of a traffic altercation in the city of Fort Wayne on August 8, 1981. The State's case was provided by testimony of two witnesses: Fort Wayne Police Officer Kevin Rarey, the intended victim of the alleged attempted battery, and his brother, Kent Rarey. According to the Rareys, Officer Rarey was off-duty and a passenger in a pick-up truck driven by Kent at the time of the incident. The pair, along with several other family members, were returning from a trip to a Fort Wayne shopping mall. As their truck turned onto Wells Street, Officer Rarey observed McKinley behind them in a blue V.W. bug driving erratically and throwing beer bottles at the back of the truck. He saw McKinley swerve over the center line several times when attempting to pass the Rarey vehicle by crossing a double yellow line. As traffic neared State Street, Rarey told his brother to pull into the left turn lane so he might speak with McKinley regarding his driving and tell him to straighten up. Rarey stated he hopped out of the truck, which was stopped about 15 to 20 feet from McKinley's car, displayed his badge and walked briskly toward the McKinley auto, stating twice enroute in an authoritative voice that he was a policeman. At the time, he was out of uniform and clad in blue jeans and a sport shirt. As he walked toward the V.W., McKinley jumped out of the car, grabbed a tire iron, raised it over his head and stated he would "split [Rarey's] f---ing skull." Kevin stopped some seven to eight feet from the car, pulled a handgun from beneath his shirt, stating "Police, throw it down." McKinley then allegedly made another threat to Kevin, but dropped the tire iron into the back seat and Rarey proceeded to arrest him for driving while intoxicated after he noticed an odor of alcohol.

At trial, McKinley offered a quite different account of the incident. According to McKinley, the Rarey truck ran a stop sign and pulled directly into the path of his auto, forcing him to cross the median to avoid an accident. Angered that he and his wife had been placed in danger by the pick-up's unlawful driving, McKinley drew up to the truck and threw two beer bottles, which had been left in the back of his auto the week before by his wife's brother, at the truck. His wife told him to calm down, as the truck's driver was most probably drunk or on drugs. Placating himself, he complied with her wishes and proceeded down Wells Street without further contact with the truck. At the corner of State Street, however, McKinley observed one of the truck's passengers get out of the vehicle and begin running toward him with an angry expression on his face. Afraid for his and his wife's safety, McKinley jumped out of his car and grabbed a tire iron from the back of the auto to fend off what he believed to be an imminent attack. McKinley said he did not hear the individual identify himself as a police officer until he stopped seven to eight feet from his car, pulled a gun and told McKinley to drop the tire iron as he was a police officer.

The testimony presented to the jury was, for the main part, these two versions of the incident, with Kent corroborating his brother's rendition of the facts and Betty McKinley corroborating that of her husband. Omitted from the evidence presented, however, upon the grant of a motion in limine by the State, was all testimony relating to those events occurring immediately after McKinley dropped the tire iron. This evidence, as depicted in McKinley's offer to prove, would have consisted of his and his wife's testimony, as well as that of Patricia Parnin, a disinterested witness who resided on Wells Street at the corner where the incident occurred, and of Cheryl Milkie, supervisor of medical records at Parkview Hospital where McKinley was later taken for his injuries.

Their collective testimony would have related the following chain of events: imme-

diately after McKinley dropped the tire iron, Rarey charged him, hit him in the head and knocked him to the ground where he continued beating and kicking him. Mrs. Parnin testified she observed Rarey, a large man, pummeling McKinley, a much smaller individual. She also heard Mrs. McKinley screaming, "Leave my husband alone. Why are you doing this to my husband?" and heard Rarey respond, "Because you mother-f---ers ran us off the f---ing road." Mrs. McKinley then stated, "No, we weren't. You was trying to run us off the road." Parnin stated the little man (McKinley) offered no resistance and looked helpless, pleading with Rarey to "wait a minute, I'm hurt." Betty McKinley also testified as to Rarey's attack on her husband and stated that Rarey continued to beat and kick her husband even after he tried to crawl away and pleaded with Rarey to let him go as he was hurt. Rarey called Mrs. McKinley a "mother f---er," and told her he'd get her too. Mrs. McKinley testified Rarey stopped the attack only when someone called to bystanders to phone the police. After other officers arrived, McKinley was arrested for driving while intoxicated and taken directly to the police station, although he was bleeding profusely from the mouth. At the station, he was taken to a room where a breathalyzer test was performed by another Fort Wayne police officer. Rarey came up to McKinley and the officer as they were exiting the examination room and placed an arm around McKinley's shoulder. He screamed in McKinley's face, "Boy, you really f---ed up," and spit on him. The other officer then stated to Rarey that he (Rarey) was going to have to file some kind of charges to protect himself. The DWI charge was then apparently dropped, and an attempted battery charge filed in its place. McKinley was taken to Parkview Hospital, where doctors discovered he had received two breaks in his jaw as well as a broken rib. Surgery was performed on McKinley's jaw which remained wired for about two months.

## DECISION

We conclude the trial court improperly excluded evidence of the beating. In making our decision, we find the evidence (1) to be part of the res gestae of the alleged offense, (2) afforded critical insight into the motives and intentions of the parties involved, (3) buttressed McKinley's testimony that he acted in self-defense and (4) related a clear motive for bias and prejudice on the part of witnesses Kevin and Kent Rarey. It was error to exclude such evidence from the jury.

*Res Gestae* Our courts have repeatedly permitted testimony concerning happenings which occur near in time and place to the charged offense, noting that these circumstances are relevant because they complete the story of the alleged crime. *See McMillan v. State,* (1983) Ind., 450 N.E.2d 996; *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. Further, our supreme court has stated that a matter is a proper subject for cross-examination if it tends to "eludicate, modify, explain, contradict or rebut" the testimony given on direct exam. *Lambert v. State,* (1983) Ind., 448 N.E.2d 288, 292. In the case at bar, the trial judge refused to allow cross-examination of Rarey or evidence from McKinley or the other witnesses regarding the beating, concluding the evidence was irrelevant because it was outside of the pertinent time frame. The State echoes this rationale in its appellate brief, urging the crime was completed at the point McKinley surrendered the tire iron and contending the later events "in no way completed the story of the crime of attempted battery on a police officer." (Brief p. 6). We disagree.

We find the disputed evidence was indicative of the parties' state of mind at the time of the offense. McKinley set forth a self-defense argument, stating a plainclothed Rarey ran toward his car looking very angry and testifying he grabbed the tire iron only to protect himself and his wife from what appeared to be an impending assault by a stranger—not a police officer. In light of this defense posture, we believe the testimony as to Rarey's

immediate, alleged brutal attack on McKinley was vital as it would have shed light on the critical issue of the manner in which Rarey approached the McKinley vehicle. It is obvious that Rarey's alleged crazed and uncontrolled conduct at the time of the arrest would have been substantial evidence of his conduct only seconds earlier and would have indicated whether he had sufficient control of his faculties to identify himself in the manner he claimed. In other words there was, if admitted, substantial evidence that Rarey was functioning in an irresponsible manner and any reasonable person under the circumstances would have sought to defend himself as did McKinley. Further, Parnin's testimony indicating McKinley offered no resistance to the attack after learning of Rarey's status would also tend to prove he was ignorant of the fact that Rarey was a police officer until Rarey pulled his gun.

▆▆▆ A fair trial requires the defendant be granted a full, adequate and effective cross-examination. *McIntyre v. State,* (1984) Ind.App., 460 N.E.2d 162. While the scope of cross-examination lies within the discretion of the trial court and will be reversed only for an abuse thereof, we must conclude such an abuse occurred here. The beating was clearly relevant to the issues presented in the case. Curtailment of the requested line of cross-examination and of the evidence offered through the defense witnesses so as to eliminate all testimony of the beating was clearly error.

▆▆▆ *Bias and Prejudice and Other Impeaching Evidence* We further observe the disputed testimony should have been allowed in order to show bias, prejudice or ulterior motive on the part of Officer Rarey. Our case law instructs that the fact that a witness has a special motive to exaggerate or falsify testimony is material. *Denton v. State,* (1983) Ind. 455 N.E.2d 905. Further, bias, prejudice or ulterior motives are always relevant because such facts may discredit him or affect the weight of his testimony, *Shanholt v. State,* (1983) Ind.App., 448 N.E.2d 308; *Pfefferkorn v. State,* (1980) Ind.App., 413 N.E.2d 1088. Doubt as to the legitimacy of cross-examination designed to show bias should be resolved in favor of the questioner. *Pfefferkorn, supra; see McIntyre v. State, supra.*

In the instant case, it was obvious that both the State and the defendant were trying the case with one eye on a potential civil liability on the part of the City of Fort Wayne and Rarey as a result of the beating incident.[1] Evidence of the beating would reveal a potential financial motive for Rarey to testify in a certain manner. It would also disclose motive for exaggeration of the incident in that Rarey could potentially face departmental discipline if McKinley's version of the incident were accepted.

We find support for our conclusion in decisions from other jurisdictions faced with similar situations, all of which have concluded evidence of an alleged beating by police is relevant in appraising the credibility of the officer's testimony at a later criminal trial. *See Lutherman v. State,* (1977) Fla.Dist.Ct.App., 348 So.2d 624; *Lenard v. State,* (1979) 79 Ill.App.3d 1046, 35 Ill.Dec. 104, 398 N.E.2d 1054; *City of Xenia v. Burton,* (1953) Ohio App., 128 N.E.2d 134; *Lansdale v. State,* (1942) 143 Tex.Cr.App. 167, 158 S.W.2d 75. The rationale for the rule was aptly summarized in *Lenard v. State, supra,* wherein the court stated:

"We do find that the trial court abused its discretion in excluding all evidence and cross-examination relating to the alleged beating. The police officers were key witnesses whose credibility was important. Defendant was trying to demonstrate that the officers' testimony should not be believed because they were attempting to cover-up the beating. We

---

1. The case was being tried for the second time, after a first trial ended with a hung jury. Before the start of the second proceedings, the record indicates a discussion was had whether an agreement could be reached whereby McKinley would consent to drop the civil litigation against the officer and municipality in exchange for the dismissal of the criminal charge against him.

thus believe the alleged beating was a proper subject matter for cross-examination. Where defendant's theory is that prosecution witnesses are unbelievable, it is reversible error not to permit cross-examination on matters which would reasonably tend to show bias, interest, or motive to testify falsely. Defendant's conviction must be reversed and the cause remanded for a new trial."

79 Ill.App.3d at 1050, 35 Ill.Dec. at 107, 398 N.E.2d at 1057 (citations omitted). Likewise, here, we find the trial court abused its discretion in refusing McKinley's offered testimony of the beating and in limiting cross-examination of Rarey on the subject.

■ Finally, although the evidence offered concerning events at the police station was slightly more remote in time, we conclude it should also have been admitted to impeach Rarey's credibility. In *Higginbotham v. State*, (1981) Ind.App., 427 N.E.2d 896, a prosecution for causing a death while driving while intoxicated, the arresting officer, after obtaining the results of a breathalyzer test, returned Higginbotham's driver's license and released him from custody. We found the trial court erred in not admitting evidence of the return of the license and the release from custody because such evidence might have been indicative of the police officer's belief that the defendant was not intoxicated. The situation in the instant case is similar to that of *Higginbotham*. Here, the events at the police station, consisting of the officer's comment that Rarey had to make a charge to protect himself, the refusal of the DWI charge, and the institution of the attempted assault charge, would indicate the officer did not initially believe he was assaulted, but brought the instant charge as a measure of self-protection. This court has previously held that coercive factors encouraging an officer to make an arrest are a proper subject for cross-examination. *See Haeger v. State*, (1979) 181 Ind.App. 5, 390 N.E.2d 239.

■ Reversed and remanded for a new trial.[2]

CONOVER, P.J., and BUCHANAN, C.J. (sitting by designation), concur.

---

**2.** McKinley raises a number of other issues, several of which would require reversal and acquittal if he were correct in his arguments. He is not. First, McKinley claims the evidence was insufficient to support the verdict, urging there was no proof Rarey was acting officially and that the evidence showed he merely held the tire iron pointed in Rarey's direction for purposes of self-defense. Both these contentions are incorrect. *Tapp v. State*, (1980) Ind. App., 406 N.E.2d 296, instructs that it is the nature of the acts performed, not on-duty status or wearing of the uniform, which determines whether a law enforcement officer is engaged in the performance of his duties. Here, Rarey testified he sought to speak with McKinley after he observed him driving erratically. He also stated he displayed his badge and clearly identified himself as a police officer. This action on his part could properly be considered the performance of a duty of his office. As to the self-defense claim, Rarey testified McKinley held the tire iron over his head poised to strike and make several threatening remarks, even after Rarey revealed his status as a police officer. This would have been sufficient to rebut McKinley's claim of self-defense.

McKinley also claims the trial court erred in granting the State's motion for a continuance to locate absent witnesses and urges he was enti-

tled to be discharged pursuant to Ind.R.Crim.P. 4(C). The grant of a continuance is a matter within the trial court's discretion, *Sidener v. State*, (1983) Ind., 446 N.E.2d 965, and we find no abuse of discretion herein. We also find no merit to McKinley's claim regarding C.R. 4(C). McKinley's first trial ended in a mistrial October 29, 1981, after the jury could not reach a decision. The parties met February 12, 1982, and selected April 15, 1982 as a new trial date. McKinley then acquiesced to several continuances, which resulted in the trial being set for May 19, 1983. The State moved for two continuances after that day, which resulted in a July 14, 1983 trial. McKinley claims the continuances granted the State caused delays not attributable to him which resulted in the trial date exceeding the one-year deadline of C.R. 4(C) by 32 days. This argument is specious. In *State ex rel. Brumfield v. Perry Circuit Court*, (1981) Ind., 426 N.E.2d 692, our supreme court held that C.R. 4(C) does not anticipate a mistrial, and that the only time limitation on bringing a case to trial following a mistrial brought about by a hung jury is "a reasonable time." Here, where McKinley agreed to nearly all delays following the mistrial, we cannot find the time of trial to be unreasonable.

McKinley also claims the trial court unduly restricted discovery by refusing to allow him

access to Rarey's service and personnel records. He bases his entire argument before this court on the contention that such records might aid his self-defense plea. We disagree. Any past episodes of violent behavior on Rarey's part would be relevant to the issue of self-defense only if McKinley had knowledge of them at the time of the incident. *See McCraney v. State,* (1983) Ind., 447 N.E.2d 589; *Schamanski v. State,* (1979) 270 Ind. 331, 385 N.E.2d 1122. Since McKinley has not argued that the material might be discoverable for some other purpose, we need not discuss this issue further.