Ross R. WRIGHT, Stanley
C. Wright, Appellants,

v.

STATE of Indiana, Appellee.

No. 30S00–9006–CR–433.

Supreme Court of Indiana.

June 24, 1992.

George J. Lewis and Blair W. Amick, Lineback & Lewis, Greenfield, for Ross R. Wright.

Dawn E. Wellman, Brand & Allen, Greenfield, for Stanley C. Wright.

Linley E. Pearson, Atty. Gen. of Indiana, Gary Damon Secrest, Deputy Atty. Gen., and Terry K. Snow, Pros. Atty., Hancock County, Greenfield, for the State.

GIVAN, Justice.

Appellants were tried by a jury and both were found guilty of murder and conspiracy to commit murder. The trial court sentenced each to a term of sixty (60) years for murder, and fifty (50) years for conspiracy to commit murder. The terms were to be served consecutively.

The facts are: On April 20, 1989, at 10:00 p.m., William Edward Freeland's wife, Teresa Freeland, found him murdered at their New Palestine residence. The coroner attributed the cause of death to stab wounds and blunt force injuries.

Officers took Teresa Freeland's statement and while attempting to verify her alibi discovered inconsistencies. On May 4, 1989, Freeland submitted to polygraph examinations during the course of which she confessed her involvement in the crime and implicated both appellants. Freeland planned her husband's death in order to inherit his estate and collect his life insurance. She stated she was having an affair with Stanley Wright. Freeland was to pay Ross Wright the sum $10,000 for helping Stanley Wright murder her husband. She entered into a plea agreement with the State and testified against both appellants.

 Appellant Stanley Wright claims the trial court erred by admitting in evidence gloves, a baseball bat, and a tire thumper seized from appellant's pickup truck shortly after his arrest. He contends the evidence was obtained without a valid search warrant. Stanley filed a pretrial motion to suppress based on the validity of the search. However, his only objection to the evidence at trial was based on relevance.

 When the trial court denies a motion to suppress evidence or takes the motion under advisement, the moving party must renew his objection to admission of the evidence at trial. *Morgan v. State* (1981), Ind.App., 427 N.E.2d 1131. If the moving party does not object to the evidence at trial, then any error is waived. *Id.* Alleged error likewise is waived if an appellant states one ground at trial and later states another ground on appeal. *Jester v. State* (1990), Ind., 551 N.E.2d 840. Stanley's objections to the evidence are different; therefore, he has failed to properly preserve this issue on appeal.

 Both appellants have raised the issue that the trial court committed reversible error by limiting cross-examination of Freeland about the circumstances surrounding her confession. The State filed a motion in limine which was granted by the trial court prohibiting reference to the polygraph examinations or questioning of Freeland regarding the circumstances of her polygraph examinations. Freeland testified against both appellants and her confession was used against them at trial. Both appellants claim that this limitation impinged upon their ability to challenge Freeland's credibility through cross-examination, as guaranteed by the Sixth Amendment, regarding motive or bias.

 Granting of a motion in limine by the trial court is not a final ruling upon the admissibility of evidence. *Sharp v. State* (1989), Ind. 534 N.E.2d 708, *cert. denied* (1990), 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617. The purpose of the ruling is to prevent presentation of the potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the trial context. *Id.*

 The harm claimed by both appellants is that they were unable to cross-examine concerning the circumstances leading up to Freeland's confession. Clearly, reference to the fact that a party or a witness has taken a polygraph examination is inadmissible. *Hall v. State* (1987), Ind., 514 N.E.2d 1265. The trial court has no discretion to admit evidence absent a proper waiver or stipulation entered into by

both parties. *Smith v. State* (1989), Ind., 547 N.E.2d 817. There was no such agreement between the parties in the present case.

The record reveals that both appellants were allowed to question Freeland regarding the changes in her story to the police, the amount of time she spent at the police station being questioned by the officers, the amount of stress she experienced during questioning, and whether she intended to lie to protect herself and appellants. Freeland also was cross-examined fully regarding her plea agreement with the State. When the issue came up at trial, counsel referred to the examination process as interviews.

 A fair trial requires a full, adequate, and effective cross-examination. *McKinley v. State* (1984), Ind.App., 465 N.E.2d 742. A party must be afforded the opportunity to fully cross-examine witnesses, and should not be unduly limited by the court. *Mengon v. State* (1987), Ind., 505 N.E.2d 788. However, collateral and prejudicial matters are properly excluded from the scope of cross-examination. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

In the present case, appellants were able to examine Freeland regarding any undue influence exercised by the police prior to her confession and any motive or bias she might have to implicate appellants in the commission of the crimes without making reference to prejudicial matters. We fail to see how appellants were harmed by the limitation selected by the trial court. The trial court did not abuse its discretion.

 Appellant Stanley Wright's final argument is that the trial court committed reversible error by denying his motion for discharge pursuant to Ind.Crim.Rule 4(B)(1) of the Indiana Rules of Criminal Procedure.

On May 5, 1989, Stanley moved for an early trial and the trial court set the cause for trial on June 12, 1989. On June 5, 1989, the State filed a motion for continuance which was granted by the trial court. The cause was reset for trial on July 10, 1989. On the day scheduled for trial, Stan-

ley filed a motion for continuance which was granted by the trial court.

On July 13, 1989, Stanley filed a demand for commencement of trial, or in the alternative, discharge pursuant to Crim.Rule 4, and stated his preparedness to go to trial on July 14, or the week of July 17, 1989. The trial court denied Stanley's demand on July 17, 1989, and set the cause for trial on August 30, 1989. On August 15, Stanley again moved for discharge. Trial commenced on September 5, 1989.

 The purpose of a motion for speedy trial made pursuant to Crim.Rule 4(B)(1) is served when the defendant makes the motion and the trial court takes action by setting the cause for trial. *Dixon v. State* (1982), Ind., 437 N.E.2d 1318. If the defendant causes a delay, as in the case at bar, he must file a motion requesting the immediate commencement of trial in order to invoke his rights under the rule. *Id.* Stanley accurately states that he did just that in the present case.

The seventy day time period would have expired on Friday, July 14, 1989. However, Stanley concedes he caused a delay of at least one day through his motion for continuance. On Monday, July 17, 1989, the trial court denied Stanley's trial demand and request for discharge and set the cause for trial on August 30, 1989.

Stanley argues that he did not acquiesce to the later trial date and relies on his previous immediate trial demand to support that argument. He further states that the parties were not present when the trial court reset the trial date. However, a defendant must object at the earliest opportunity when his trial is set beyond the time limitations of Crim.Rule 4. *Fry v. State* (1988), Ind., 521 N.E.2d 1302. If an objection is not timely made, the defendant is deemed to have acquiesced to the later trial date. *Decker v. State* (1988), Ind., 528 N.E.2d 1119. Stanley waited nearly a month before filing an objection to the later trial date. Therefore, it was reasonable to assume that he had abandoned his request for a speedy trial. The trial court did not err in denying his motion for discharge.

■ Appellant, Ross Wright, claims that the trial court erred by granting the State's motion for mistrial. Ross argues that there was no manifest necessity for the mistrial and that he was subjected to former jeopardy when he was brought to trial a second time on the same charges.

The first trial began on September 5, 1989. During his opening statement, counsel for Stanley Wright stated to the jury that Freeland had failed polygraph examinations, and two posters were displayed in the courtroom both of which referred to Freeland's polygraph examinations. One of the posters was entitled "Why Teresa Freeland Is A Liar." The other poster contained references to the actual polygraph examinations. The State moved for a mistrial which ultimately was granted by the trial court. Counsel for Ross objected to the State's motion for mistrial.

■ The determination to grant a mistrial is within the trial court's discretion and great deference is accorded the trial court on appeal since it is in the best position to gauge the circumstances and the probable impact on the jury. *Hall v. State* (1987), Ind., 514 N.E.2d 1265. Further, the trial court has the authority to declare a mistrial where a manifest necessity for the mistrial exists. *Patterson v. State* (1986), Ind., 495 N.E.2d 714. Reversal of the trial court's determination will be required only after an abuse of discretion has been established. *Id.*

In the case at bar, defense counsel referred to Freeland's polygraph examination which clearly was inadmissible absent a waiver or stipulation between the parties. *Hall, supra.* We have held that once inadmissible testimony is interjected, the trial court has a duty to evaluate the situation to determine the damage done by reference to that subject matter. *Patterson, supra.* The trial judge in the present case polled the jury to determine which of them had read the objectionable posters. Most of the jurors had seen at least some portion of the posters.

The United States Supreme Court held in *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, that when defense counsel makes an improper comment in his opening statement in a criminal trial, the trial court has several remedial measures at its disposal. The trial court may instruct the jury to disregard the improper comment. The trial court may choose to discipline counsel or remove him from trial. The Court further noted that unless defense counsel are to be accorded an unfair advantage, the trial court should also have the power to declare a mistrial if that remedy is appropriate.

■ Jeopardy attaches in a criminal case once selection of the jury and alternates is complete and the panel has been sworn. *Livingston v. State* (1989), Ind., 544 N.E.2d 1364. Ross correctly states that if the trial court, without the consent of the defendant, discharges the jury to whom the cause has been submitted before a verdict has been reached, without the existence of some great necessity requiring such action, then such action serves as an acquittal of the defendant of those charges and exempts him from reprosecution for the offenses charged. *Maddox v. State* (1951), 230 Ind. 92, 102 N.E.2d 225. The question here is whether the trial court was correct in its determination that a manifest necessity for granting the mistrial existed.

The cases cited by Ross in support of his argument that the trial court should have admonished the jury after the improper reference to the polygraph examination instead of declaring a mistrial are distinguishable from the case at bar. In the present case, the defense deliberately put before the jury statements and exhibits referring to Freeland's polygraph examination during opening statement. The cases cited by appellant uphold a trial court's choice of admonishment as a proper remedial measure, but those cases involve the inadvertent volunteering of the fact a polygraph was taken, or invitation of that testimony by the party claiming prejudice from the denial of that party's own motion for mistrial on appeal. *See e.g., Carter v. State* (1987), Ind., 512 N.E.2d 158; *Beal v. State* (1983), Ind., 453 N.E.2d 190; *Music v. State* (1983), Ind., 448 N.E.2d 1082; *Daw-*

*son v. State* (1975), 163 Ind.App. 493, 324 N.E.2d 839.

The trial court was in the best position to determine the necessity for a mistrial, and that determination will be afforded great deference by this Court upon review. *White v. State* (1984), Ind., 460 N.E.2d 132. Although it was not Ross Wright's counsel whose conduct precipitated the granting of the mistrial, his counsel joined in the objection to the motion for mistrial. Neither party in a criminal case has the right to have the case decided by a jury which may be tainted by bias. *Arizona v. Washington, supra.* In light of the conduct of counsel in referring to the inadmissible polygraph evidence in his opening statement and deliberately attempting to call attention to this evidence, we see no abuse of discretion in the trial court's decision to grant the mistrial.

Next Ross raises several issues regarding the amendment of the second count against him, Conspiracy to Commit Murder. First, he argues that the trial court committed reversible error when it permitted the State to file an Amended Count II Information and dismissed the original count because it subjected him to reprosecution for a charge dismissed after jeopardy had attached.

After the trial court declared a mistrial, the matter was reset for trial to commence on October 23, 1989. The second trial began on January 8, 1990 and concluded on January 15, 1990. During the interim between the mistrial and the second trial, the State sought to file an amended conspiracy count against appellant and requested a hearing. The trial court granted the State's request over Ross' objection.

Ross is correct in his statement that once the jury was impanelled and sworn, jeopardy attached in the first trial. *Livingston, supra.* However, there was a manifest necessity for granting the motion for mistrial and resetting the cause for trial at a later date. Filing of the amended count and dismissal of the original count occurred after the first panel of jurors had been discharged. Therefore, the jeopardy question and the propriety of the amendment

procedure are two separate inquiries. We have already addressed the former jeopardy issue in regard to the necessity for the mistrial.

■ Ross argues that filing the Amended Count II later than 30 days prior to the omnibus date violated Ind.Code § 35–34–1–5(b) because it substantially altered the theory of the prosecution and subjected him to substantial prejudice.

■ An information may not be amended to change the theory of the case or the identity of the offense charged. Ind.Code § 35–34–1–5(a)(9); *Sharp, supra.* However, an information may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Cornett v. State* (1989), Ind., 536 N.E.2d 501. Before the amendment is permitted, the trial court is required to give the parties adequate notice of the proposed amendment and an opportunity to be heard. Ind.Code § 35–34–1–5(d). If the trial court permits the amendment, then the trial court shall order a continuance, if one is requested by the defendant, in order to provide him with an opportunity to prepare his defense. *Id.*

On September 28, the trial court set the motion for a pretrial conference on October 5. On that day, Ross filed a response. The hearing was held, and the court took the matter under advisement. The State's request was granted on October 12 and the trial started on January 8, 1990.

The amended count charging appellant with Conspiracy to Commit Murder stated that appellant had committed five overt acts in the furtherance of the conspiracy to murder the victim, including the act of murdering the victim. The amendment did not change the identity of the offense. The defenses available to appellant against the original information were available against the amended information. Therefore, applying the aforementioned standard, the trial court did not err in permitting the amendment of the information.

■ Ross' final challenge regarding the filing of Amended Count II is that in its amended form the information raises an

impermissible *Bruton* situation. In *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the United States Supreme Court reversed Bruton's conviction in a joint trial because his Sixth Amendment right to cross-examine witnesses testifying against him was violated when his codefendant's confession which implicated Bruton was admitted in evidence and the codefendant did not testify at trial.

In the present case, appellant's codefendant did not testify at the joint trial, but conflicting statements made by the codefendant to the police were introduced in evidence. The Amended Count II Information differed from the original Count II Information in that it charged each conspirator with specific overt acts in furtherance of the conspiracy. He argues that the State benefitted from the amendment in that his conviction for conspiracy was secured by imputation through proof of an overt act on his codefendant's part, and that he was unable to cross-examine the codefendant regarding the statements.

The present case differs from the situation in *Bruton* in that Ross is not directly implicated in the conspiracy via admission of his codefendant's statements. Those statements prove that the codefendant gave conflicting stories to the police as to the conspiracy. However, because Ind. Code § 35–41–5–2(b) provides that the State meets its burden of proof of the conspiracy against any conspirator when it shows that either of them acted in furtherance of the conspiracy, the State could prove its case against Ross by imputing the act of the co-defendant to him.

■ Ross argues that he was denied his right of confrontation because his codefendant did not testify. The Sixth Amendment of the United States Constitution guarantees the right of confrontation in all criminal cases. However, we have held that the right of confrontation is not absolute. *Miller v. State* (1987), Ind., 517 N.E.2d 64. *See also, Mattox v. United States* (1895), 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409.

In addition, we have held that a denial of the right of confrontation can be harmless error where there is evidence supporting the conviction that is so convincing that the jury could not properly find otherwise. *Brewster v. State* (1983), Ind., 450 N.E.2d 507. Applying that standard to the present case, admission of the statements made by Stanley in evidence if erroneous, was harmless. The State presented the testimony of Teresa Freeland which directly implicated both appellants in the commission of the crime and detailed their part in the conspiracy to commit the crime. Admission of the statements was cumulative evidence of the conspiracy. We have held that the admission of cumulative evidence alone is not grounds for reversal. *Miller v. State* (1989), Ind., 541 N.E.2d 260. The trial court did not commit reversible error.

■ Ross argues that the trial court committed reversible error when it admitted in evidence a knife and knife sheath which were recovered from appellant's bedroom.

A warrant was issued for Ross' arrest. Officers arrested him outside his residence pursuant to that warrant on May 5, 1989. They then obtained the written consent of appellant's roommate to enter the premises and conduct a search. While the officers were in the hallway, one officer observed a knife sheath in Ross' bedroom. The officer seized the knife and knife sheath, which were later introduced into evidence at trial.

Ross attacks the admission of those pieces of evidence on several grounds, each of which he claims is reversible error. He argues that the State did not prove that his roommate could give a valid consent to search either his home or room. He argues that the State failed to prove that exigent circumstances existed which would justify the warrantless search. He also contends that the evidence is inadmissible under either the plain view or open view doctrines. Further, he argues that the trial court was in error when it placed the burden of proving the unlawfulness of the search upon him.

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Stallings v. State*

(1987), Ind., 508 N.E.2d 550. However, a valid consent to search obviates the warrant requirement. *Morgan v. State* (1989), Ind., 544 N.E.2d 143. Consent to a search which is given by a third-party having common authority or a sufficient relationship to the premises to be searched is sufficient to justify a warrantless search. *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242; *Brooks v. State* (1986), Ind., 497 N.E.2d 210. Moreover, evidence which is in plain view is not seized as a product of a search. *Morgan, supra.*

Upon review of the trial court's determination regarding the validity of a search, this Court will consider the evidence favorable to the ruling.

The State presented evidence during the hearing on Ross' motion to suppress which supported the admission of the knife and knife sheath under the theory that the officers had valid consent to search from Ross' roommate and that the evidence was then discovered in plain view. From the hallway, an officer observed the knife sheath containing the knife in plain view on top of a dresser in Ross' room. The officer testified that he was aware that the victim had been stabbed with a knife and that there was a warrant for Ross' arrest.

Ross argued that he had exclusive control of his room; therefore, his roommate could not consent to the search of the room. However, as the trial court found, the roommate's consent permitted the officers to lawfully search the common areas of the residence from which the officers could see the knife sheath in plain view on the dresser. We see no error in the trial court's admission of this evidence under those circumstances. Moreover, we see no error in the State's failure to present evidence of exigent circumstances.

Ross' argument that the trial court erred by placing the burden of proving the unlawfulness of the search on the defendant is without merit. The trial court properly placed the burden of proving the validity of the warrantless search upon the State. The State argued that the search was valid, based upon the roommate's consent and plain view. Ross then argued that the

search did not fit within those exceptions to the warrant requirement. We see no error here.

██ Ross' final argument is that the trial court erred by allowing in evidence both a tape and transcript of a telephone conversation between Teresa Freeland and him which occurred after Freeland had given her confession. He contends that his Sixth Amendment right to counsel attached after the warrant for his arrest was obtained, and that he was prejudiced by the admission of the evidence because he was not advised of his right to counsel.

██ We have held that the Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against a defendant. *Little v. State* (1985), Ind., 475 N.E.2d 677. Adversarial proceedings against a defendant commence by way of filing a formal charge, indictment, information or arraignment. *Heffner v. State* (1988), Ind., 530 N.E.2d 297; Ind.Code § 35-34-1-1. The trial court did not err as Ross' right to counsel had not yet attached.

Further, Ross was not in custody; therefore, the conversation was not a custodial interrogation, and *Miranda* safeguards likewise did not apply to the situation. *Pasco v. State* (1990), Ind., 563 N.E.2d 587.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Judge, dissenting.

The State is correct in its contention that absent a waiver or stipulation between the parties, even the mention that a party or witness has taken a polygraph examination is not admissible. However, the reasons for this rule of evidence are that the test is not sufficiently accurate to permit its admission and there is fear the jury will give undue weight to the validity of a polygraph test. *Hall v. State* (1987), Ind., 514 N.E.2d 1265. In the circumstances of this case the reasons for operation of the rule are not present. Here, the main prosecution wit-

ness was subjected to a three and one half hour interrogation. At first she was attached to a polygraph machine and gave statements which did not at all incriminate her or appellants. The interrogator repeatedly told her that she was being deceitful and untruthful, which caused her to cry uncontrollably. She was led to believe she was flunking the test and that the officers were attempting to "pin" the murder on her. After this type of serious emotional and mental pressure she implicated appellants in the murder of her husband. The polygraph was used as a tool of interrogation which brought about the change of story by the witness. Properly viewed, the polygraph was used as a means of coercion and not a means of verifying truth or falsity. These convictions rest in large measure upon the testimony of this witness, and the court's refusal to permit defense questioning of her about the police use of the polygraph in questioning her and getting her to change her story, was an undue restriction upon the right to cross-examine her. For this reason alone, these convictions should be reversed.

A further ground for reversal of the conviction of Ross Wright exists. When defense counsel argued before the jury in opening statement that the aforementioned chief witness for the State had failed a polygraph test, no manifest necessity for declaring a mistrial was created. The admonition given at first by the trial judge when he denied the State's mistrial motion was more than enough to cure any error. The later trial court order declaring a mistrial referred only to "harm which is potential" and does not satisfy the "manifest necessity" doctrine. This resulting reprosecution of appellant Ross Wright was in contravention of the Constitutional protection against double jeopardy. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). I would order him discharged and appellant Stanley C. Wright retried.