**James Thomas HEFFNER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 28S00–8609–CR–802.

Supreme Court of Indiana.

Nov. 23, 1988.

Mary M. Runnells, Bloomfield, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

James Thomas Heffner was tried by jury and convicted of voluntary manslaughter, a Class B felony, Ind.Code § 35–42–1–3 (Burns 1985 Repl.). The trial court sentenced him to twenty years in prision.

Among the several issues Heffner raises on direct appeal, he prevails on one: Whether the admission of Heffner's statements during interrogation by the police after he had requested an attorney violated his Sixth Amendment right to counsel.

### I. *Evidence at Trial*

On Friday, June 21, 1985, Heffner drove from Baltimore to Indiana to take his friend Phyllis Wiczulis back to her home in Maryland. Wiczulis had been visiting her family in Indiana. Her sister, Betty McCammon, had a going-away party on Sunday, June 23. After several hours of drinking, Wiczulis and Heffner bickered about whether Wiczulis would return to Baltimore and whether she would keep her .38 caliber pistol. They left the party about 10:30 or 11 p.m.

Heffner returned to McCammon's home alone about 12:30 or 1 a.m. on Monday, June 24. He told McCammon that Wiczulis had jumped out of the car when they stopped for gas and had jumped into another car. He said that he was tired of fooling with Wiczulis and would return to Baltimore by himself. He then left and drove straight to Baltimore.

The police found Wiczulis' body the next morning. She had been shot in the head. After several hours of investigation by the Indiana State Police, Lt. Fowler at the Bloomington post called the Maryland State Police at about 2 p.m. Indiana time. He spoke to Sgt. McLeary telling McLeary that there had been a murder, that Heffner was the suspected killer, and that Heffner was on his way to Baltimore. Fowler asked McLeary to go to Heffner's destination and attempt to locate him. McLeary was told that Heffner was armed with a shotgun and, perhaps, with a .38 caliber pistol. He also told McLeary that Indiana police were in the process of obtaining an arrest warrant for Heffner but that no warrant had yet been issued. McLeary had no other information about the crime.

McLeary drove to the address and arrested Heffner without incident at about 3:15 p.m. Indiana time on June 24. McLeary administered the *Miranda* warning and asked Heffner if he had a shotgun in the car. Heffner replied that he did. McLeary then asked if he could search the trunk of the car. Heffner agreed.

Meanwhile, back in Indiana, McElroy concluded interviewing witnesses at 2:46 p.m. and went directly to the prosecutor's office to draw up charging papers and request an arrest warrant for Heffner. The warrant for Heffner was signed at about 4:10 p.m. and McElroy told Joseph Price of the Maryland State Police about the warrant at about 4:45 p.m. Price then transported Heffner to Maryland State Police headquarters at Pikesville, Maryland. Price charged Heffner under the Maryland fugitive statute and again administered the *Miranda* warnings. Heffner signed a waiver of rights form. Heffner did not request an attorney at this time. No prom-

ises or threats were made. Price then interrogated Heffner, who denied the murder.

Following the interview, Price took Heffner before a Maryland district court commissioner for a bail hearing. The next morning, June 25, Heffner asked to call his attorney, Richard Keller. He was able only to speak to Keller's associate, who told Heffner he would give Keller the message. Price then took Heffner to the district court for an initial hearing on the fugitive charge. On June 27, Heffner was taken from his cell to an office where he was interrogated by McElroy, Michael Hasler of the Greene County Sheriff's Department, and Sgt. McLeary. Heffner was again advised of his rights. Heffner stated that his attorney was supposed to be there. McElroy asked Heffner if he wished to continue. Heffner agreed to do so and made incriminating statements during the interview.

## II. *Search and Seizure*

Heffner argues that his statement of June 24, items seized from his car, and clothing taken from him were inadmissible as fruits of an illegal arrest in violation of the Fourth Amendment of the United States Constitution. He maintains that the warrantless arrest was illegal because the Maryland police did not have probable cause to believe he had committed a crime.

The trial court found that when Heffner was arrested by Baltimore police and Maryland State Police, information had been provided to the arresting officers by the Indiana State Police which constituted probable cause to believe that a felony had been committed in Indiana and that Heffner had committed it.

■ Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that the person being arrested has committed or is in the process of committing an offense. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Information obtained by one officer may be relied upon by other law enforcement officials who are called upon to assist in the investigation and arrest of a suspect, as long as the officer who obtained the information possessed probable cause to make the arrest. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). As Justice O'Conner noted in *Hensley:*

> In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimized the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

*Id.* at 231, 105 S.Ct. at 681, 83 L.Ed.2d at 613–614.

■ Officer McElroy had gathered sufficient information during his morning interviews to support a reasonable belief that a felony had been committed and that Heffner had committed it. McElroy transmitted sufficient information to Lt. Fowler and Fowler relayed the information to McLeary in Baltimore. Because McElroy had probable cause to arrest Heffner, McLeary was able to effectuate a valid warrantless arrest based on McElroy's information which Flower relayed. The fruits of that arrest were admissible. Because Heffner's arrest was accomplished in accordance with Fourth Amendment principles, the trial judge properly denied Heffner's motion to suppress the admission of the items removed from Heffner's vehicle after its impoundment and Heffner's statements given to officials while in detention.

## III. *Right to Counsel*

Heffner challenges the admissibility of his June 24th and June 27th statements on the basis that the interrogations which produced these statements were conducted in violation of the Fifth and Sixth Amendments to the United States Constitution.

*Admissibility of the June 24th Statement*

On June 24th, shortly after his arrest, Heffner was transferred to the custody of Maryland State Police officials in Pikes-

ville, Maryland. There, Price of the Maryland State Police read Heffner his *Miranda* rights from a form. Heffner executed the form and gave Price a statement. The next day, on June 25th, Heffner spoke to his attorney's associate, who promised to convey Heffner's request to his attorney. Price testified that he believed that Heffner wanted counsel at the bail and extradition hearing on June 25th.

 When reviewing a trial court's ruling on the admissibility of a statement made during custodial interrogation, we determine only whether there is substantial evidence of probative value in the record to support the ruling. *Zook v. State* (1987), Ind., 513 N.E.2d 1217. In order to find that a confession made during coercive custodial interrogation without the advice of counsel is admissible, the trial court must find that the defendant's Fifth Amendment privilege against self-incrimination has been knowingly, voluntarily, and intelligently waived.

 The record reveals that Price advised Heffner of his *Miranda* rights, and that Heffner signed the waiver form before Price interviewed him on June 24th. Price did not threaten or promise Heffner anything during the interview. Heffner did not request the assistance of counsel. There is sufficient evidence of probative value in the record to support the trial court's ruling that Heffner's June 24th statement was made subsequent to a knowing, voluntary and intelligent waiver of his Fifth Amendment rights.

*Admissibility of the June 27th Statement*

 On June 27th, Officer McElroy of the Indiana State Police arrived in Maryland. McElroy knew that Heffner had requested an attorney before his extradition hearing on June 25. McElroy again advised Heffner of his *Miranda* rights and Heffner signed the waiver form. Then the following dialogue took place:

McElroy: Before I go any further, I want to make this clear on the record. Is ... at this time, you have not hired an attorney. Is that correct?

Heffner: No sir. My attorney is suppose to have been, but he hasn't showed up yet.

McElroy: You have attempted to contact an attorney?

Heffner: Yes I have.

McElroy: And who is that?

Heffner: Mr. Richard Keller.

McElroy: O.K., and is he an attorney here in Baltimore?

Heffner: Yes he is.

McElroy: O.K. Uh ... I guess what I want to make clear for the record at this time ... you have not retained an attorney. Is that correct? You have not paid him any money?

Heffner: No sir ... not yet.

McElroy: O.K. And is it with your permission ... you signed a waiver here ... is it with your permission that you will go ahead and talk to us, and you understand that any time you want to stop talking to us, you can do that?

Heffner: Yes sir, I understand that.

McElroy: O.K. So you fully understand all these rights I have explained to you?

Heffner: Yes sir, I do.

McElroy: O.K. Uh ... now, back to yourself. How long have you lived at this address you gave us ...

Officer McElroy continued the interrogation for three and a half hours. After three hours, shortly before Heffner admitted to shooting Wiczulis, the following took place:

McElroy: I wrote on here the time that the tape stopped, and it was seven thirty. It was seven thirty two when I started the tape ... there's two minutes there that have lapsed. Has anybody threatened you or ... or forced you to do anything ...

Heffner: No sir, they haven't.

McElroy: Has anyone promised you anything?

Heffner: No sir.

McElroy: O.K. You are still talking to us voluntarily?

Heffner: Yes sir.

McElroy: A couple of things were said while you were off ... while we were off the tape and ... and ... uh ... I want to be ... during this whole time we're talking, I want to have it recorded so everything is fair for you and, and ... that you understand what's going on.

Heffner: Right.

McElroy: You asked me a question. What was that?

Heffner: I asked you ... I think it was ... if there was anybody that you ... could help me.

McElroy: And what did I say?

Heffner: You said that there's a possibility ... I don't remember your exact words, but ...

McElroy: What did I say? Did I say that I think we're working towards that direction?

Heffner: Yes. You ... that's what you said ... that we're working towards that.

McElroy: I think that we're getting there, but for me to help you, you have to help yourself and ... what I can do as far as helping is ... to maybe help you understand what's going on. Maybe I can ... you know ... talk to the Judge, or I can talk to the prosecutor. I have to make him understand ... help him understand ...

Heffner: Right. I understand that.

McElroy: O.K. I can't promise you anything. You understand that?

Heffner: I know that.

McElroy: O.K. ... uh ... I'm not ... I'm just a police officer. You've dealt with police officers before. And ... but I want to help you. I want to help what's hurting ... is what I want to help, and help you understand this ...

The Sixth Amendment right to counsel attaches at or after the time adversary proceedings have been initiated against the accused by way of formal charge, indictment, information or arraignment. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Heffner's Sixth Amendment right to counsel attached on June 24 when the warrant for his arrest was executed pursuant to an information filed against him in Indiana.

 The Sixth Amendment right to counsel protects different interests than the Fifth Amendment rights embodied in the *Miranda* warnings. The Sixth Amendment guarantee protects an accused from adversarial confrontations, including extrajudicial settings, fueled by the commitment of the expert prosecutorial forces of organized society. The consequences of such an unequal confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149, 1156 (1967). If the defendant requests an attorney at any time after the right attaches, interrogation must cease and not be resumed unless the defendant initiates further questioning. Statements made after request for an attorney are inadmissible unless they were made during interrogation requested or initiated by the defendant. *Minnick v. State* (1984), Ind., 467 N.E.2d 754.

Heffner contends that his June 27th statement was inadmissible under the Sixth Amendment because it was obtained at police instigation despite his request for assistance of counsel.

Following the June 24 interrogation and after spending the night in jail, Heffner asked to call his lawyer. He was unable to reach his lawyer, but his lawyer's associate promised to relay Heffner's message. On June 27, at the beginning of the interview initiated by Indiana police, who knew Heffner had requested an attorney, Sgt. McElroy again advised Heffner of his *Miranda* rights and obtained a waiver. Sgt. McElroy then asked Heffner if he had retained an attorney. Heffner replied, "No sir. My attorney is suppose to have been, but he hasn't showed up yet." McElroy then mischaracterized the nature of the right, saying, "I guess what I want to make clear for the record at this time ... you have not retained an attorney. Is that correct? You have not paid him any money?" When Heffner answered that he had not paid any money to the attorney he had requested, "yet," McElroy reiterated that Heffner did

not have to talk to the police and then obtained Heffner's "permission" to conduct the interview.

 After the Sixth Amendment right to counsel is invoked, a waiver in response to police-initiated interrogation, even after additional *Miranda* warnings, is not sufficiently voluntary and intelligent to meet the constitutional mandate of the Sixth and Fourteenth Amendments. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Even if the right to counsel has attached, however, the accused must seek to exercise the right to have counsel present. *Patterson v. Illinois*, —— U.S. ——, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

Considering the totality of the circumstances surrounding the June 27th interrogation, Heffner's conviction cannot stand. The Indiana police knew Heffner had requested, contacted and expected his lawyer. Nevertheless, McElroy gave Heffner the impression that he could still waive his right to assistance of counsel. Indeed, Heffner could have waived his right to counsel by initiating further discussion with police, but he did not do so. Heffner's June 27th statement did not follow a voluntary and intelligent waiver of his properly invoked Sixth Amendment right to counsel. Instead, the statement followed both McElroy's intimation that Heffner's right to counsel was contingent upon a retainer and a three and a half hour interrogation culminating in the incriminating statement. These circumstances do not demonstrate a knowing voluntary and intelligent waiver of right to counsel. The June 27th statement is not admissible.

Accordingly, the judgment is reversed and the cause remanded for a new trial.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents with opinion.

PIVARNIK, Justice, dissenting.

It appears to me the trial court properly admitted the June 27 statement based on *Cox v. State* (1985) Ind., 475 N.E.2d 664 and *Turner v. State* (1980) Ind., 407 N.E.2d 235.

The defendant had already given a statement and *never* requested counsel or expressed a desire to remain silent. I dissent.