**Robert D. WILLIAMS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–9711–CR–614.

Supreme Court of Indiana.

Sept. 2, 1999.

Belle T. Choate, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Robert D. Williams[1] guilty of murder and determined him to be a habitual offender. The court sentenced him to sixty-five years in prison, enhanced by thirty years for the habitual finding. Williams raises three issues in this direct appeal:

1. Whether a tape-recorded statement Williams gave to the police should have been excluded as involuntary and/or tainted by a previous, suppressed statement,

2. Whether an improper reference in the prosecutor's opening statement to Williams' "testimony," rather than "statement," was sufficiently prejudicial such that, despite the trial judge's initial instructions and specific admonition, Williams' motion for mistrial should have been granted, and

3. Whether Williams was entitled to an instruction on reckless homicide.

**Facts and Procedural History**

On September 7, 1996, Marilyn Anderson was found lying in a pool of blood in her home. She had been stabbed twenty-six times and died as a result of those wounds. A palm print and blood from the scene matched the palm print and blood of Williams. While police were questioning Williams, they noticed that he had a cut on his arm and another on his hand.

On September 10, 1996, Williams telephoned Detective Brian Moore, expressed his desire to give a statement, and asked for a ride to the police station. The police picked up Williams and his wife and drove them to the police station shortly after 3:30 p.m. After interviewing his wife, the police interviewed Williams from 6:20 p.m. until approximately 8:35 p.m. Williams then gave a taped statement from 9:10 p.m. until 10:14 p.m., with both Detective Moore and Officer Sergeant Crooke present. Within that time Williams was given a thirty to forty-five minute break, and offered pizza and soda. Williams was not under arrest.

Following that taped statement, a forty-minute, unrecorded conversation ensued between Williams and the two officers, during which Williams agreed to take a polygraph examination. A *Miranda* warning preceded the polygraph session. (R. at 640, 664.)[2]

---

1. Appellate counsel initially refers to her client as "Charles D. Williams." (Appellant's Br. at 1.)

2. Appellate counsel contends that Williams was "subjected to a polygraph examination—again

The polygraph session began about midnight and lasted until 2:45 a.m. Around 3 a.m., Detective Moore and Sergeant Crooke interviewed Williams off-tape. During that conversation, the police officers asked Williams, "[Y]ou didn't mean for this to happen, did you[?]" (R. at 643.) Williams then admitted having accidentally stabbed Marilyn Anderson. The police administered a new *Miranda* warning and asked Williams to record his statement on audiotape. (R. at 638.) Williams requested an attorney at that point, and the conversation was terminated at 3:13 a.m. (*Id.*)

Detective Moore had noticed the wounds on Williams' arm and hand, and a red substance on his shoes, and asked for a crime scene officer to take photographs and to take the shoes. When Detective Moore returned to the room where Williams was waiting, Williams said that he was willing to give a tape-recorded statement. (R. at 638–39.) Detective Moore re-read Williams his *Miranda* rights, (R. at 639), and at 3:43 a.m. Williams signed a written waiver of those rights. (R. at 693A.)[3] Williams then gave a tape-recorded statement which was completed at 4:13 a.m. (R. at 639.) Williams admitted that he had stabbed Marilyn Anderson but said that it was unintentional. (R. at 672B–74B.) This taped statement was introduced at trial.

During her opening statement at trial, the deputy prosecutor referred to the defendant's "testimony" that the jury would hear, saying: "And you will weigh his testimony along with all the surrounding circumstances that you hear. But he described that there was a struggle, and he admitted that he stabbed her over and over." (R. at 156–57.) The defense attorney moved for a mistrial based upon the reference. The deputy prosecutor responded that her reference to testimony was a mistake, and that she meant to say "statement." (R. at 160.) The court found that the error was inadvertent and, taking into account the context of the misstatement regarding Williams' conversation with the police officers, denied the motion for mistrial but agreed to issue an admonition. She admonished the jury as follows:

> [B]efore we proceed ... with the Defendant's opening statement I wanted to correct a statement that was made. Mrs. Conley mistakenly referred to the Defendant's testimony during her opening statement. She was referring to conversations or statements that he had given to the detective and not testimony in any sense of Defendant's testimony in the courtroom, and we've addressed that in the Court's previous instruction, and that instruction still applies in this case. So that was simply a misstatement in terms of referring to testimony. She was referring to conversations or a previous statement given to the detective.

(R. at 162–63.) The trial then proceeded over the defense objection.

After the close of testimony, the defense requested that the jury be instructed on the lesser offense of voluntary manslaughter, Ind.Code § 35–42–1–3. The trial judge granted the request. Defense counsel did not request any other instructions and stated the defense had no objection to the instructions as tendered. (R. at 743.)

### I. Admission of Taped Statement

Williams first asserts that the tape-recorded statement admitted at trial should have been excluded, as it was not voluntarily given. He further contends that the admitted statement was tainted by "the lack of voluntariness and the illegality of the first statement," (Appellant's Br. at 6), i.e., the unrecorded statement that was made to Detective Moore and Sergeant Crooke after the poly-

without being advised of his rights—and asked for a lawyer immediately upon learning that he had the right to a lawyer." (Appellant's Br. at 5.) The record indicates, however, that the polygraph examiner issued a <u>Miranda</u> warning before administering the examination. (R. at 640, 664.) Further, counsel acknowledges elsewhere that "[Williams] was read his <u>Miranda</u> warnings before the polygraph." (Appellant's Br. at 3 (underscoring supplied).)

3. The record presented to us contains a series of page numbers (pages 670 through 699) duplicated in error. For clarity of reference, the first series is hereinafter cited with the letter "A" following the record page number and the second series is cited with the letter "B" following the number. Corresponding notations have been made in the record.

graph examination had been administered. (Appellant's Br. at 7.)

In considering the admission of a confession, the trial court must assess whether the State's behavior "was such as to overbear the defendant's will to resist and to bring about a confession not freely self-determined." *Smith v. State*, 543 N.E.2d 634, 637 (Ind.1989). On appeal, we consider any uncontroverted evidence and, in the case of conflicting evidence, that which supports a trial court's decision. *Bivins v. State*, 642 N.E.2d 928, 941 (Ind.1994), *cert. denied* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

A confession is voluntary if, looking at the totality of the circumstances, it was "free and voluntary, not induced by any violence, threats, promises, or other improper influences." *Bivins*, 642 N.E.2d at 941–42 (citing *Armour v. State*, 479 N.E.2d 1294, 1298 (Ind.1985)). A defendant who is questioned following a polygraph examination that was accompanied by a *Miranda* advisement is considered to have waived his right to counsel at questioning following the examination unless the circumstances have changed so significantly that his answers are no longer voluntary, or his waiver is no longer "knowing and intelligent." *Bivins*, 642 N.E.2d at 939 (citing *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (questioning following polygraph did not require renewed *Miranda* warning where "the questions put to [defendant] after the examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before.")).

The circumstances adequately demonstrate that Williams' statement was free and voluntary, rather than compelled. In fact, Williams initiated the interview with the police. He requested transportation to the police station. Although Williams was kept in a locked room during the period of questioning, he made few requests to leave the room, including two requests to visit a restroom (both of which were accommodated). Williams was not placed under arrest until after his unrecorded statement, which was made following a *Miranda* warning and a polygraph examination. The final tape-recorded statement admitted into evidence was made after Williams, by his own testimony, re-initiated discussion with police officers, (R. at 657), and waived his previous request for counsel in writing. (R. at 693A.) During the hearing on the admissibility of the tape-recorded confession, Williams also acknowledged that he understood his *Miranda* rights when he gave the statement and that he "just wanted it over with." (R. at 657.)

Although he claims on appeal that lack of sleep affected the voluntariness of his confession, he admits that he had slept the night before and also that he slept during a portion of the polygraph examination. (R. at 653–54.) Detective Moore testified, contrary to Williams' assertion that the death penalty was mentioned in order to induce Williams to confess, that no such discussion took place. (R. at 645.) In total, the record contains substantial and probative evidence that the statement admitted at trial was voluntarily given.

Williams claims his recorded confession was tainted by a previous statement that the trial court suppressed. The trial judge, wishing to err on the side of caution, if at all, suppressed the unrecorded statement that Williams gave following the polygraph examination, largely on the basis that a new interrogator was in the room.[4] (R. at 665.) We think this laudable caution falls far short of anything suggesting that the admitted statement was the fruit of a poisonous tree.

---

4. The record is unclear regarding the presence of a new interrogator. According to Detective Moore's testimony, the only individuals present during the suppressed statement were himself, Williams, and Sergeant Crooke. (R. at 643.) Both Sergeant Crooke and Detective Moore were present during the initial tape-recorded statement, which was taken prior to the polygraph examination, (R. at 639), so the identity of the new investigator is unclear. However, even if there was a new investigator, there is no automatic requirement that a defendant be re-advised of his rights "each time various officers [leave] the room and [are] replaced by others...." *Bivins*, 642 N.E.2d at 939. The key inquiry remains whether circumstances have changed so seriously that the defendant's statements are no longer voluntary or his waiver no longer knowing and intelligent. *Id.* at 939.

Williams also asserts that the admitted statement was tainted because it occurred shortly after Williams invoked his right to counsel. (Appellant's Br. at 7.)

In *Mayberry v. State,* 670 N.E.2d 1262 (Ind.1996), the defendant requested the assistance of counsel after hearing her *Miranda* rights. A police officer responded that counsel could not be arranged until the next day, and went on to ask administrative and background questions in order to fill out paperwork related to the request for an attorney. The police officer agreed to call the defendant's parents and prepared to leave, saying that she would return if the defendant wished to talk. The defendant then indicated her willingness to talk without counsel, tore up the form she had signed requesting counsel, signed a second waiver of rights, and confessed to having killed the victim. *Id.* at 1269–70. We held that the trial court in *Mayberry* could have concluded that the State met its burden of proof of knowing and intelligent waiver of the defendant's right to counsel and her right not to incriminate herself. We found no abuse of discretion in the admission of the videotaped confession. *Id.* at 1270.

Similarly, in this case, Williams changed his mind and decided to make a statement voluntarily shortly after invoking his rights to remain silent and to the assistance of counsel. Contrary to Williams' assertion on appeal, the fact that there was only a brief period between his request for counsel and his agreement to talk with police without counsel present does not render his statement involuntary per se, absent other evidence that Williams' will was overborne. The trial court was correct to admit Williams' tape-recorded statement.

## II. Improper Statement by Deputy Prosecutor

■ Williams next asserts that his motion for mistrial should have been granted based on the deputy prosecutor's inadvertent use of the word "testimony" when referring to Williams' recorded statement to the police. (Appellant's Br. at 8–10.) Even some constitutional errors do not require a new trial if the error was "'harmless beyond a reasonable doubt.'" *Leach v. State,* 699 N.E.2d

641, 643 (Ind.1998) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). A prosecutor's improper comment on a defendant's silence at trial is one type of "trial error" that is to be assessed using harmless error analysis. *Leach,* 699 N.E.2d at 643 n. 3 (citing *Arizona v. Fulminante,* 499 U.S. 279, 310–11, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In determining whether a mistrial is warranted, the relevant inquiry is whether the defendant "was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision." *Leach,* 699 N.E.2d at 644 (citing *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind. 1996)).

■ The single inadvertent misstatement by the deputy prosecutor did not place Williams in the grave peril required to justify a mistrial. The jury had previously been instructed regarding Williams' testimony in the courtroom, and was reminded of that instruction as part of the admonition following the misstatement. The defense did not raise its objection to the terminology until the conclusion of the deputy prosecutor's opening statement.

In response to the objection, the trial court promptly issued an admonition to the jury to clarify the reference. The wording of the admonition focused on the statement by Williams to which the deputy prosecutor had been referring, thereby providing proper clarification and at the same time drawing minimal attention to the issue of Williams' testimony, or lack thereof, at trial. (R. at 163.)

Counsel offers little support for her bare assertion that, with or without the initial instruction and curative admonition, the single misstatement in the deputy prosecutor's opening statement would have had a prejudicial impact on the minds of the jurors. (*See* Appellant's Br. at 10.) Based on the nature of the improper statement (a one-word error in an opening statement), the mitigating measures taken by the trial court (the instruction and admonition), and the overwhelming nature of the evidence presented

at trial (the matching palm print and blood and Williams' own statement), the misstatement constituted harmless error, and the trial court correctly denied Williams' motion for a mistrial.

### III. Instruction on Lesser Included Offense

Williams' last assertion is that the trial court erred by not instructing the jury as to the lesser included offense of reckless homicide, Ind.Code § 35-42-1-5. (Appellant's Br. at 10.) Williams acknowledges that his trial counsel did not tender a proposed instruction on the lesser included offense of reckless homicide. Indeed, counsel explicitly accepted the instructions as given. (R. at 743.) Nothing is preserved for appeal.

### Conclusion

For the aforementioned reasons, we affirm.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.