

FILED

Jan 25 2019, 5:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Morgan K. Govan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 25, 2019

Court of Appeals Case No.
18A-CR-708

Appeal from the Allen Superior
Court

The Honorable John F. Surbeck,
Judge

Trial Court Cause No.
02D05-1609-F3-53

**Barteau, Senior Judge.**

# Statement of the Case

Morgan K. Govan appeals his conviction of possession of cocaine or narcotic drug, a Level 4 felony;[1] and the trial court's determination that he is an habitual offender.[2] Govan also appeals his sentence. We affirm.

# Issues

Govan raises three issues, which we restate as:

 I.   Whether the trial court erred in admitting into evidence the heroin that officers found on Govan after his arrest.

 II.  Whether the trial court abused its discretion during sentencing.

 III. Whether Govan's sentence is inappropriate in light of the nature of the offenses and the character of the offender.

# Facts and Procedural History

On August 29, 2016, Detective Chris Crapser of the Fort Wayne Police Department was dispatched to a hospital to interview Stacey Cook. He noted that Cook had several serious injuries. Cook told the detective that Govan had driven her to his house at 2244 Chestnut Street in Fort Wayne, where he had tied her up and struck her repeatedly with his fists, his feet, and a hammer. She

---

[1] Ind. Code § 35-48-4-6 (2014).

[2] Ind. Code § 35-50-2-8 (2015).

further told Detective Crapser that Govan had said that he was going to kill her. Cook explained that another woman had also been in the house. According to Cook, Govan had also beaten the other woman, but she escaped. Cook's mother, Pamela Cook, gave Govan's cellular phone number to the detective. Govan had attempted to contact Cook or Pamela through Facebook while Cook was still in the hospital.

[4]     Detective Crapser next learned the second victim's name was Destinee Prater. A woman claiming to be Prater's grandmother had called 911 on August 29, 2016, to report that Prater was being held against her will at 2244 Chestnut Street. That afternoon, officers were dispatched to that address to investigate the report. The officers were told a woman might be restrained and injured at that location. They determined that one of the house's windows was broken, apparently from the inside. The officers shouted into the window and knocked on the front door, but no one responded. They entered the residence and searched. No one was present, but the officers found a pool of what appeared to be blood in the basement, along with electrical cords that appeared to have been used to tie someone up.

[5]     Meanwhile, Detective Crapser had asked Detective Matthew Foote to assist him with the investigation. After talking with Detective Crapser about the case, Detective Foote worked with Detective David Wilkins to prepare a search warrant affidavit for real-time data on the location of Govan's cellular phone. The detectives faxed the affidavit and related documents to Sprint, which was Govan's cellular phone service provider, on August 29, 2016, at 8:27 p.m. The

detectives asked Sprint for an "emergency or exigent ping," or approximate fix on the current location of Govan's phone. Tr. Vol. 2, p. 65. A Sprint employee reviewed the warrant and sent the requested information to Detective Foote.

[6] Based on the cellular phone "pings" and other information identifying Govan's truck, Detective Foote and several other officers found Govan on August 29, 2016, at 10:15 p.m. at a motel in Fort Wayne. They approached Govan as he sat in his truck, ordered him out of the truck, and took him into custody. Detective Foote searched Govan after his arrest and found a clear plastic baggie in his pants pocket. The baggie contained a powdery substance. Field testing showed a positive result for the presence of heroin, a controlled substance. Subsequent testing revealed the heroin weighed 13.32 grams.

[7] Later that evening, Detective Crapser questioned Prater at the hospital after talking with her by phone. She was also badly injured, showing signs of having been beaten.

[8] On September 2, 2016, officers filed a search warrant affidavit with the trial court. The warrant was the same document that the detectives had submitted to Sprint on August 29, 2016. The court determined there was probable cause to believe that real-time tracking of Govan's cellular phone would obtain information that was "relevant and material to an ongoing criminal investigation." Tr. Ex. Vol., Trial Exhibits, Defendant's Ex. C.

[9] The State charged Govan with two counts of criminal confinement, both Level 3 felonies, one for Cook and one for Prater; one count of possession of cocaine

or narcotic drug, a Level 4 felony; one count of kidnapping, a Level 5 felony, for Cook; two counts of battery, both Level 5 felonies, one for Cook and another for Prater; and intimidation, a Level 6 felony, for Cook. The State further alleged that Govan was an habitual offender. Later, during plea agreement negotiations, the State added two counts of criminal confinement, both Level 6 felonies,[3] one for Cook and one for Prater.

[10] Govan filed a motion to suppress evidence but later withdrew it. He then refiled the motion to suppress, along with a motion to dismiss. The trial court denied his motions after a hearing. Govan asked the court to certify its ruling for discretionary interlocutory review, but the court denied his request.

[11] Next, Govan and the State negotiated a partial plea agreement. Govan agreed to plead guilty to two counts of confinement, both Level 6 felonies, for his acts involving Cook and Prater. The parties agreed Govan would receive a sentence of two years and 183 days on one count of confinement and two years on the other count, to be served consecutively. Govan explicitly retained his right to be tried on the charge of possession of cocaine or narcotic drug and the habitual offender enhancement. The State agreed to dismiss the other charges.

[12] Govan waived his right to a jury trial on the possession charge and the sentencing enhancement. A bench trial was held, and the trial court

---

[3] Ind. Code § 35-42-3-3 (2014).

determined Govan was guilty of possession of cocaine or narcotic drug as a Level 4 felony and was an habitual offender.

[13] At sentencing, the court followed the parties' partial plea agreement and imposed two years and 183 days on one count of confinement, and two years on the second count. The court further sentenced Govan to six years for the charge of possession of cocaine or narcotic drug, enhanced by twenty years for the habitual offender sentencing enhancement, for a total of twenty-six years. The court ordered Govan to serve the sentences for the three felony convictions consecutively, resulting in an aggregate sentence of thirty years and 183 days. This appeal followed.

# Discussion and Decision

## I. Admission of Evidence – Heroin

[14] Govan claims the trial court should not have admitted into evidence the heroin that Detective Foote found on him after his arrest. Govan frames the issue as whether the court should have granted his motion to suppress. Because the case proceeded to trial, his claim is more appropriately considered as a request to review the court's admission of the evidence at trial. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[15] The admission of evidence at trial is a matter left to the discretion of the court. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). We review the court's decision for abuse of that discretion and reverse only if admission is clearly against the logic and effect of the facts and circumstances, and the error affects a

party's substantial rights. *Id.* We consider any conflicting evidence in favor of the court's ruling, and we also consider any uncontested evidence favorable to the defendant. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied*. We employ a de novo standard when reviewing the court's ultimate determinations of probable cause and other constitutional claims. *Id.*

[16] Govan argues the trial court should not have admitted the heroin into evidence because the police violated his federal and state constitutional protections against unreasonable search and seizure by: (1) asking Govan's cellular phone service provider to provide real-time location data for his phone; and (2) arresting Govan, allegedly without probable cause. We address each issue in turn.

## A. "Pinging" Govan's Cellular Phone

[17] Govan argues the police lacked sufficient grounds to ask his cellular phone service provider to provide "pings" that revealed the location of his cellular phone in real time. He further contends the police failed to comply with the requirements of the governing statute. Finally, Govan concludes these errors violated his state and federal constitutional rights. With respect to the Indiana Constitution, Govan fails to provide a separate, cogent analysis, citing only one case on this claim without elaboration. Appellant's Brief, p. 28. We deem the Indiana constitutional claim waived on this point and focus on his federal constitutional claim. *See Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005) (choosing not to address Indiana constitutional claim; appellant failed to present an argument separate from his federal constitutional claim).

[18]     The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[19]     The Fourth Amendment protects against government intrusions into areas and items for which people have a reasonable "expectation of privacy." *Carpenter v. U.S.*, __ U.S. __, 138 S. Ct. 2206, 2213, 201 L. Ed. 2d 507 (2018). An official intrusion into such private areas generally qualifies as a search and requires a warrant supported by probable cause. *Id.*

[20]     In this case, Govan argues that he "enjoys a reasonable and legitimate expectation of privacy in the location data stored by his cellular telephone provider." Appellant's Br. p. 25. The State does not necessarily agree, correctly noting that the United States Supreme Court has never decided that issue. In *Carpenter*, the Supreme Court stated a defendant had a reasonable expectation of privacy in historical cell-site location records but explicitly declined to extend its ruling to "real-time" cellular phone location techniques. *Id.* at 2220. In addition, neither party points us to an Indiana Supreme Court decision on this point, and we have not located one. In any event, for purposes of this opinion we assume Govan had a reasonable expectation of privacy in his real-time cellular phone location data.

The police did not obtain a court-issued search warrant before seeking Govan's cellular phone location data, but that is not the end of the analysis. Govan concedes that, among other exceptions to the Fourth Amendment's warrant requirement, exigent circumstances may "permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *Kentucky v. King*, 563 U.S. 452, 455, 131 S. Ct. 1849, 1853-54, 179 L. Ed. 2d 865 (2011). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006). The Indiana Supreme Court has similarly stated exigent circumstances may include "threats to the lives and safety of officers and others and the imminent destruction of evidence." *Holder v. State*, 847 N.E.2d 930, 937 (Ind. 2006).

The General Assembly has codified a procedure for law enforcement agencies to obtain real-time cellular phone location data under exigent circumstances. Indiana Code section 35-33-5-12 (2014) provides:

> (a) A law enforcement officer or law enforcement agency may not use a real time tracking instrument that is capable of obtaining geolocation information concerning a cellular device connected to a cellular network unless:
>
> (1) the law enforcement officer or law enforcement agency has obtained an order issued by a court based upon a finding of probable cause to use the tracking instrument; or

(2) exigent circumstances exist that necessitate using the tracking instrument without first obtaining a court order.

(b) If a law enforcement officer or law enforcement agency uses a real time tracking instrument described in subsection (a) based upon the existence of exigent circumstances, the law enforcement officer or law enforcement agency shall seek to obtain an order issued by a court based upon a finding of probable cause not later than seventy-two (72) hours after the initial use of the real time tracking instrument.

[23] Govan does not claim that Indiana Code section 35-33-5-12 violates the Fourth Amendment by allowing officers to obtain real-time cellular phone location data without first obtaining a court-ordered warrant. He instead claims that under the circumstances of this case, exigent circumstances did not exist for purposes of both the Fourth Amendment and the statute.

[24] On August 29, 2016, Detective Crapser interviewed Stacey Cook at a hospital. Cook told the detective that Govan had restrained her in his basement and beat her with his hands, feet, and a hammer. Govan had also threatened to kill her. In addition, Govan had restrained a second woman in his basement, and he beat and injured her until she managed to escape. Detective Crapser soon learned the second victim's name was Destinee Prater. In the meantime, officers had entered Govan's house on Chestnut Street and found blood in the basement. They also found cords that had apparently been used to bind people.

[25] Detective Crapser asked Detective Foote to obtain current location data for Govan's cellular phone. At that time, Detective Crapser believed both Cook

and Prater were still in danger of harm from Govan. Cook was in the hospital but not under guard, and Detective Crapser was unsure of Prater's location. Detective Crapser relayed information to Foote, who worked with Detective Wilkins to prepare a "search warrant affidavit" to be submitted to Sprint and, later, the trial court. Tr. Ex. Vol., Trial Exhibits, Defendant's Ex. B.

In the affidavit, Detective Wilkins stated Govan was suspected of restraining Cook and Prater in his basement and brutally beating them for forty-five minutes, resulting in severe injuries until Prater escaped. The affidavit further stated Cook's mother, Pamela, had given Govan's phone number to Crapser at the hospital. Pamela indicated she was frightened for her life and Cook's life because Govan knew where they lived. Pamela further told Crapser that Govan had tried to contact her or Cook via Facebook after Cook had arrived at the hospital.

Detective Wilkins further stated in the affidavit that knowing the location of a suspect's cell phone when violent crimes are involved "is often needed to safeguard the public and to prevent the intimidation of witnesses . . . ." *Id.* He faxed the search warrant affidavit to Sprint with a cover sheet describing the request as "exigent phone locate." Tr. Ex. Vol., Trial Exhibits, Defendant's Ex. A. He also enclosed a signed "Stored Communication, GPS/Ping Emergency Request Form," on which he stated: "Person in possession of phone held 2 women hostage. He beat one victim with a hammer and kicked and punched her. Threatened to kill family [and] he knows where her family lives." *Id.* The form included the following certification: "I hereby certify on behalf of the

above-mentioned [law enforcement agency] that an emergency involving danger of death or serious physical injury to any person exists and requires disclosure without delay of communications related to the emergency." *Id.*

[28] At the suppression hearing, Detective Foote testified that exigent grounds existed because Govan was likely aware that one or both victims was at the hospital, and "[w]e often times have people show up at hospitals in [sic] looking for the victims." Tr. Vol. 1, p. 110. When the detectives prepared the search warrant affidavit, they did not know Prater's location, and Detective Foote was concerned for her safety. Detective Foote was also aware Govan had used a deadly weapon to attack Cook. Finally, Detective Foote noted that in these situations, Sprint makes an independent determination about whether the situation is exigent and does not merely rubber-stamp a police officer's request.

[29] Under these circumstances, the police had ample reason to believe that Govan had committed violent felonies and presented an ongoing threat to the lives and safety of Cook, Prater, and their families. They had further reason to believe that obtaining real-time data about the location of Govan's cellular phone would assist them in finding him and furthering their investigation. These were sufficiently exigent circumstances under Indiana Code section 35-33-5-12(a)(2)

and the Fourth Amendment to justify obtaining real-time phone location information without first seeking a court order.[4]

[30]     As an additional claim of error, Govan notes that Indiana Code section 35-33-5-12(b) requires officers to file the search warrant affidavit with a trial court not later than seventy-two hours after they have obtained cellular phone location information under exigent circumstances. Govan claims, and the State concedes, that in this case the police failed to timely comply with subsection (b). The officers filed their search warrant affidavit one day late, on September 2. Govan claims the State's violation of the statute must result in the exclusion of the heroin from evidence.

[31]     We cannot condone the officers' failure to comply with statutory mandates. Regardless, Indiana Code section 35-33-5-12 does not mandate the suppression or exclusion of evidence for the State's noncompliance with its requirements. Further, it is unclear whether the statutory violation or the one-day delay violated Govan's Fourth Amendment rights. Some constitutional errors do not require a new trial if the error was harmless beyond a reasonable doubt. *Williams v. State*, 715 N.E.2d 843, 847 (Ind. 1999) (quotation omitted). Moreover, Govan does not allege he was harmed by the one-day delay. The trial court determined that the affidavit provided probable cause to seek real-

---

[4] A panel of this Court recently determined that, under the circumstances of a different case, there were sufficient exigent circumstances for the police to have obtained real-time location data for a suspect's cellular phone without first obtaining a warrant. *Johnson v. State*, ___ N.E.3d ___, Cause No. 27A02-1712-CR-2958 (Ind. Ct. App. Dec. 21, 2018).

time location date for Govan's cellular phone. In addition, there is no indication that the delay hindered Govan's ability to challenge the affidavit after charges were filed. We conclude the State's one-day delay was harmless error that did not require the exclusion of the heroin from evidence.

### B. Probable Cause for Arrest

[32] Govan claims Detective Foote lacked sufficient information to arrest him on the night of August 29, 2016, and the arrest violated his rights under the Fourth Amendment and article 1, section 11 of the Indiana Constitution.

[33] Starting with the Fourth Amendment, a warrantless arrest is permissible under that constitutional provision when, at the time of the arrest, the arresting officer has probable cause to believe the defendant committed a felony. *Armour v. State*, 762 N.E.2d 208, 215 (Ind. Ct. App. 2002), *trans. denied*. "Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that the person being arrested has committed or is in the process of committing an offense." *Heffner v. State*, 530 N.E.2d 297, 300 (Ind. 1988). Information obtained by one officer may be relied upon by other law enforcement officials who are called upon to assist in the investigation and arrest of a suspect, if the officer who obtained the information possessed probable cause to make the arrest. *Id.* The amount of evidence needed to meet the probable cause requirement is determined on a case-by-case basis. *Armour*, 762 N.E.2d at 215.

[34] In this case, Detective Foote did not speak directly with Cook or Prater, but he spoke with Detective Crapser "several times throughout the evening" of August 29, 2016. Tr. Vol. 2, p. 60. Detective Crapser told Detective Foote that Govan was a potential suspect in a "Battery Confinement" incident. *Id.* at 50. In addition, Detective Foote had helped to prepare the affidavit that the officers sent to Sprint on August 29, 2016, using information provided by Detective Crapser. The affidavit was admitted into evidence at trial and is evidence of the information that Detective Crapser shared with Detective Foote. In the affidavit, Detective Wilkins, with Detective Foote's assistance, described in detail how Govan had restrained and beaten Cook and Prater.

[35] Under these facts and circumstances, a person of reasonable caution in Detective Foote's position, based on information provided by Detective Crapser, could have concluded that Govan had committed felony offenses of confinement and battery. Detective Foote justifiably relied on Detective Crapser's information in making the arrest. *See Heffner*, 530 N.E.2d at 300 (officer had probable cause to arrest Heffner; the officer received information from other officers stating that Heffner was a suspect in a murder).

[36] Turning to article I, section 11 of the Indiana Constitution, it provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[37] We consider the legality of a search or seizure under that provision according to the totality of the circumstances. *Richard v. State*, 7 N.E.3d 347, 350 (Ind. Ct. App. 2014), *trans. denied*. We balance: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion that the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs. *Id.*

[38] In this case, Detective Foote had a high degree of knowledge that a violation had occurred. He had spoken with Detective Crapser, and he used information provided by Detective Crapser to help draft the affidavit to Sprint requesting information on the then-current location of Govan's cellular phone. The warrant described in detail Govan's restraint of Cook and Prater and, additionally, his severe beating of them.

[39] There is no doubt that the warrantless arrest intruded upon Govan's ordinary activities. Indeed, there are few intrusions more severe than an arrest. In any event, arresting Govan without a warrant was crucial to law enforcement needs. Govan had threatened to kill Cook, and so long as he was free he posed a continuing threat to Cook and Prater's well-being, as well as the safety of Cook's family. Balancing the three factors, we conclude the warrantless arrest was reasonable under the Indiana Constitution.

[40] Govan further argues that, even if his arrest was lawful, Detective Foote's search of his person was unconstitutional. The Fourth Amendment permits a warrantless "search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332,

338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009). This exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* at 338, 129 S. Ct. at 1716. The scope of such a search must be commensurate with the purposes of protecting officers and "safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at 339, 129 S. Ct. at 1716. The Fourth Amendment does not require additional probable cause for a search incident to arrest. *White v. State*, 24 N.E.3d 535, 540 (Ind. Ct. App. 2015), *trans. denied*.

[41] In this case, Detective Foote and other officers arrested Govan for suspected crimes including confinement and battery. Thus, his liberty had already been curtailed when the detective searched his person. Detective Foote found the heroin in one of Govan's pants pockets. The search was limited to Govan's person and fulfilled the purposes of ensuring officer safety and locating incriminating evidence. The search incident to arrest did not violate the Fourth Amendment. *See Wilson v. State*, 754 N.E.2d 950, 957 (Ind. Ct. App. 2001) (trial court did not err in admitting into evidence drugs found during search of defendant's person during lawful arrest).

[42] We reach the same result under the Indiana Constitution, considering the totality of the circumstances and the three-factor test set forth above. Once a lawful arrest has been made, no additional degree of suspicion is required for a search of an arrestee's person. *Garcia v. State*, 47 N.E.3d 1196, 1200 (Ind. 2016). Further, the search did not by itself hamper Govan's activities. At the

time of the search, Govan was already under arrest, so his freedom of movement was already severely (and lawfully) curtailed. Finally, law enforcement needs were high, because the officers needed to ensure Govan did not have: (1) a weapon; (2) relevant evidence that could be destroyed; or (3) other contraband that could be brought into jail. Balancing the three factors, Detective Foote's post-arrest search of Govan did not violate the Indiana Constitution. *See id.* at 1203 (officer's discovery of bottle on the person of an arrestee, and officer's opening of the bottle, did not violate article I, section 11).

[43] In summary, Govan's search and seizure claims must fail, and the trial court did not err in allowing the heroin into evidence during trial.

## II. Sentencing - Discretion

[44] Govan argues the trial court erred while imposing the sentence for his drug possession conviction and habitual offender enhancement because the court failed to explain its reasons. During sentencing, the court must state its reasons for selecting the sentence "if the court finds aggravating circumstances or mitigating circumstances." Ind. Code § 35-38-1-3 (1983). Similarly, "[a]fter a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes unless the court imposes the advisory sentence for the felony." Ind. Code § 35-38-1-1.3 (2014). Nevertheless, a trial court "may impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana . . . regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind. Code § 35-38-1-7.1(d) (2015).

[45] Govan was found guilty of possession of cocaine or narcotic drug as a Level 4 felony and was determined to be an habitual offender. At the time he committed his crimes, the minimum sentence for a Level 4 felony was two years, the maximum sentence was twelve years, and the advisory sentence was six years. Ind. Code section 35-50-2-5.5 (2014). In addition, if a person is determined to be an habitual offender, the court may add a fixed term of between six years and twenty years to a conviction for murder or a Level 1 through Level 4 felony. Ind. Code § 35-50-2-8.

[46] The trial court sentenced Govan to the advisory sentence of six years for the Level 4 felony but imposed the maximum possible habitual offender enhancement of twenty years. Pursuant to Indiana Code section 35-38-1-1.3, the court did not need to explain its reasons for imposing the six-year advisory sentence, but Govan argues the court should have explained its basis for the twenty-year sentencing enhancement.

[47] We agree that the better practice would have been for the trial court to explain its basis for the twenty-year sentence enhancement. In any event, even if the trial court is found to have abused its discretion during sentencing, any error is harmless if the sentence imposed was not inappropriate. *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), *trans. denied*. As we discuss below, Govan's sentence was not inappropriate, and we decline to further address this issue.

# III. Sentencing - Inappropriateness

[48] Govan claims the twenty-year sentencing enhancement should be reduced to six years. Article VII, section 6 of the Indiana Constitution authorizes this Court to review and revise sentences. This authority is implemented through Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[49] As we conduct our review, we consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Walters v. State*, 68 N.E.3d 1097, 1101 (Ind. Ct. App. 2017), *trans. denied*. It is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Wheeler v. State*, 95 N.E.3d 149, 160 (Ind. Ct. App. 2018). The principal role of such review is to attempt to leaven the outliers. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018). We conduct our sentencing review under Appellate Rule 7(B) with "substantial deference" to the trial court's sentencing decision. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014).

[50] As discussed above, the trial court imposed the advisory six-year sentence upon Govan for Level 4 felony possession of cocaine or narcotic drug, enhanced by the maximum possible enhancement of twenty years for being an habitual offender. His sentence was well short of the possible maximum of thirty-two years. The court further ordered Govan to serve his twenty-six-year sentence

consecutively with his sentences for the two counts of confinement, for a total sentence of thirty and one-half years.

[51] Turning to the nature of the offense of possession of cocaine or narcotic drug as a Level 4 felony, we note that the State must prove a defendant possessed at least ten grams but less than twenty-eight grams of a controlled substance. Ind. Code § 35-48-4-6. Govan possessed over thirteen grams of heroin, above the statutory minimum. We further note Detective Foote found the heroin on Govan while arresting him for confining Cook and Prater earlier that day, so his possession of heroin was a continuation of a long course of serious criminal misconduct.

[52] As for Govan's character, he was thirty-nine years old at sentencing. His habitual offender enhancement was based on prior convictions for dealing in cocaine (2004) and battery (2008). Govan continues to commit offenses involving controlled substances and violence despite opportunities to reform. He has other prior felony convictions for robbery, operating while intoxicated, and nonsupport of a child. Govan also accrued misdemeanor convictions for battery (four convictions), resisting law enforcement, operating while intoxicated, and operating while suspended. He was further determined to be an habitual offender in a prior case. Govan accrued new convictions every few years, except when he was in prison. He further admitted to using cocaine and methamphetamines daily prior to his arrest in this case. Govan is simply unwilling to conform to the requirements of the law and has rejected numerous opportunities to reform.

In addition, Govan has not benefitted from alternatives to incarceration. He has been revoked from placements on parole and home detention. Considering the nature of the offenses and Govan's extensive record of criminal misconduct, he has failed to persuade us that his sentence is an outlier. We conclude his sentence is not inappropriate. As a result, any abuse of the trial court's sentencing discretion is harmless error.

On a related note, Govan briefly argues the twenty-year habitual offender sentencing enhancement is unconstitutionally disproportionate to his six-year sentence for possession of cocaine or narcotic drug, citing article I, section 16 of the Indiana Constitution. That provision states, in relevant part: "All penalties shall be proportioned to the nature of the offense." *Id.* A review of the proportionality of a habitual offender enhancement has two components: an inquiry into the nature and gravity of the present felony; and an inquiry into the nature of the predicate felonies upon which the habitual offender enhancement is based. *Manley v. State*, 656 N.E.2d 277, 280 (Ind. Ct. App. 1995), *trans. denied*.

In this case, Govan could have received up to twelve years for his conviction for possession of cocaine or narcotic drug, a Level 4 felony. The present offense is thus grave in nature. Further, the habitual offender enhancement's predicate felonies were dealing in cocaine, a Class B felony, and battery, a Class C felony, both serious offenses. It bears repeating that Govan continues to commit offenses involving controlled substances and violence despite numerous opportunities to reform. Based upon this record, we cannot conclude the

habitual offender sentencing enhancement was unconstitutionally disproportionate to the sentence for the present felony.

# Conclusion

[56] For the reasons stated above, we affirm the judgment of the trial court.

[57] Affirmed.

[58] Riley, J., and Kirsch, J., concur.